JAMES B. THOMAS v. THE CHICAGO & GRAND TRUNK
RAILWAY COMPANY.

*Railroad companies—Freight trains—Permit to passenger—Ejection
by conductor—Pleading—Declaration—Variance.*

1. A railroad company has a right to prohibit passengers from
riding on freight trains, or to prescribe the conditions on which
they may ride.

2. ( A rule adopted by a railroad company forbidding conductors of
freight trains from receiving or taking fare from any person
traveling on their trains, or from allowing any person to travel
as a passenger without the written order of the superintendent
or assistant superintendent in charge of the district, except on
such way freight trains as are printed in time-tables, is a rea-
sonable one, and within its power to prescribe. )

3. In such a case it is the duty of the conductor to cause a pas-
senger to leave his train if attempting to ride without such per-
mit, and he is not to be governed in his action by any arrange-
ment the passenger claims to have made with the ticket agent,
where the ticket purchased only entitles him to ride on passen-
ger trains.

4. It is well settled that one cannot sue for the breach of one duty,
and recover for the breach of another.

So *held*, where plaintiff sued a railroad company for being
ejected from a train through the fault of the conductor, and
the case was submitted to the jury on the theory of a mis-
direction by the agent who sold him a ticket, with the agree-
ment that he could ride on said train with said ticket.

Error to Genesee. (Newton, J.) Argued October 11,
1888. Decided November 1, 1888.

Case. Defendant brings error. Reversed. The facts
are stated in the opinion.

*Geer & Williams* (*E. W. Meddaugh,* of counsel), for
appellant, contended as stated in the opinion, citing the
authorities therein cited.

*Frank B. Leland,* for plaintiff.

Long, J. This action was brought in the Genesee circuit court by plaintiff to recover damages claimed to have been sustained by him by being put off defendant's freight train, just east of the city of Flint, on September 3, 1887. On the trial the plaintiff recovered judgment for $100. Defendant brings error.

Plaintiff's claim in his declaration is that on September 3, 1887, about half-past 10 o'clock in the forenoon, he purchased from the authorized agent of said defendant at Flint, and paid the price demanded therefor, a ticket called a "Week's-end" return ticket, which by its terms entitled him to ride upon any train he might elect, running from Flint to Port Huron upon said road on said day, on which ticket is indorsed, with a mark calling special attention thereto, "Good going on any train Saturday," said day being Saturday, as aforesaid; and said plaintiff was directed by said ticket agent of said company to get aboard a train which would be at said station at Flint in about 10 minutes, and going, as said plaintiff was informed by said agent, to the city of Port Huron, as aforesaid.

That said plaintiff got aboard of said train, and sat down. When about a mile and one-half or two miles from said station at Flint, the conductor of said train asked plaintiff for his fare, and was tendered plaintiff's said ticket. The conductor then demanded a permit from plaintiff, and was informed that he had none, and that he needed none, as his ticket gave him especial permission to ride on all trains running from Flint to Port Huron on that day. The conductor then became abusive, and, checking the speed of the train, he wrongfully, unlawfully, and uproariously ordered plaintiff off said train. Plaintiff refused to get off, and became greatly excited, fearing a conflict with said conductor and trainmen, employés of said railway company, and there-

upon said conductor wrongfully, unlawfully, outrageously, and blasphemously ordered plaintiff to get off said train immediately, while it was still in motion; and said plaintiff was finally compelled to get off said train while it was still in motion, doing so only to avoid a conflict with the conductor and other employés of said company; and said plaintiff, being sick and unable to walk, was compelled, on account of his unlawful expulsion from said train, to carry his baggage back to said city of Flint; and plaintiff was greatly injured in his mind, his body, and his general health by said wrongful expulsion, etc.

Plaintiff testified in his own behalf upon the trial, and his claim there made was that on September 3, 1887, he went to the ticket office of defendant in the city of Flint, and inquired if there was a train going to Port Huron before 7:55 on that evening.   Being advised by the station agent that there was, he called for and purchased a week's-end return ticket to Port Huron.   This was on Saturday.   After purchasing and paying for said ticket, the station agent then said to him:

"All I have to do is to give the conductor of this freight train a permit, and make her a passenger train. *   *   *   I am going to give the conductor a permit."

Plaintiff testified further that he then left the depot, went outside, and waited about three-quarters of an hour, when the train came along; that another commercial traveling man was with him; that they then saw the conductor, boarded the train, left their baggage, went out for a lunch, and on their return the conductor, standing on the back of the car, beckoned them to hurry up; that they then got into the car, and the train started.

After the train had got under way, the conductor came and demanded their tickets, which were given him, and he then asked for the permits.   They then told the conductor the station agent said he would give the conductor

permits for them to ride on this train. The conductor said they could not ride. Plaintiff then testified:

"I told him I would ride with him. I had bought that ticket, and paid for it, and was going to Port Huron. The conductor said we could not ride, checked the train down, and ordered us off. * * * We got off about one mile from the station."

Upon his cross-examination the plaintiff was asked:

"Q. Why didn't you ask the conductor if the agent had given him a permit?

"A. Because it was not my place to.

"Q. Didn't you want to know?

"A. I bought my ticket from the official of the road, from the agent, and he told me,—I had a right to rely upon what the agent told me,—that the ticket was a first-class ticket on that train; that I could ride on that train. The agent told me he would give the conductor a permit. I told the conductor what the agent told me about giving him a permit. The conductor told me he could not carry me if I didn't have a permit. He told me I would have to get off that train. * * *

"Q. Did he not tell you, according to the rules and regulations of the company; no man could ride on these through freights without a permit?

"A. Yes, sir."

It further appeared from the plaintiff's testimony that, after being put off this train, and returning to the depot, he saw the operator, who told him another through freight, would be along in a few minutes, when a permit would be got for him, and he could ride upon that to Port. Huron. Plaintiff refused this offer, and demanded that he be given a permit, and put on a yard-engine standing there, and carried over the road till the train from which he had been ejected was overtaken, and then put aboard that train, and permitted to ride to Port Huron.

It will be seen the claim made in the declaration is that the conductor wrongfully and unlawfully ejected him from the train upon which he lawfully might ride, for the reason that he had a ticket good on any train; charg--

ing the defendant with the misconduct of the conductor in unlawfully ejecting him while he was in possession of a ticket which entitled him to ride on that train. His declaration is formed upon the theory that his ticket entitled him to ride on the through freight train without a permit, and that the conductor wrongfully compelled him to get off. The ticket was produced on the trial, and reads as follows:

"Chicago & Grand Trunk Railway. Week's-end Excursion Ticket. Mr. J. B. Thomas. From Port Huron to Flint. Only for one continuous trip each way, and is not transferable. Good going on any train Saturday, September 3, 1887, and return not later than Monday, September 5, 1887. It will not be good to return on date of issue. This ticket will not be good for return passage unless presented by the person whose signature appears below, and unless the purchaser's signature is reproduced in the presence of the conductor in space provided on back hereof. No stopover allowed.
                    "W. J. SPICER, General Manager.
"I fully understand and agree to the above contract.
    [Signed]                              J. B. THOMAS.
"Form C—X—20.
"Chicago & Grand Trunk Railway. Week's-end Excursion Ticket. From Flint to Port Huron, on conditions named in the contract. Not good if detached.
    "Form C—X—20."

It appeared upon the trial that the defendant company had adopted a rule, No. 167, which was in force on September 3, 1887, and which reads as follows:

"No conductor in charge of a freight train shall receive or take a fare from any person traveling on his train, nor shall he allow any person to travel as a passenger without the written order of the superintendent or assistant superintendent in charge of the district, except such way freight trains as are printed in time-tables."

The train from which plaintiff was put off was No. 27, and a through freight. It was not on the published time-table. It was not a train that carried passengers

without a permit, such as is provided for in the above rule. 'These facts were known to the conductor at the time he put plaintiff off the train. This ticket did not entitle the plaintiff to ride on the train in question. It was not a way freight, and was not printed in the time-tables as a train upon which passengers would be carried. The rule adopted by the company was a reasonable one, and within its power to prescribe.

The ticket held by plaintiff only entitled him to ride upon passenger trains. The words in the ticket, " Good going on any train Saturday, September 3, 1887," had reference to trains used in the carriage of passengers, and the permission to ride on a through freight could only be granted by the superintendent or assistant superintendent in charge of the district. This permission the plaintiff did not hold, and it is not pretended that any such permit was given. The defendant company had the right to prohibit passengers from riding on freight trains, or to prescribe the conditions on which they might so ride. *Railroad Co. v. Rose,* 11 Neb. 177 (8 N. W. Rep. 433).

It was the duty of the conductor to cause a passenger to leave the train if he was attempting to ride without having obtained the permission of the superintendent or assistant superintendent in charge of the district, and the conductor is not to be governed in his action by any arrangement the passenger claims to have made with the ticket agent, under the circumstances here shown. The defendant was not bound by any law, statutory or otherwise, to carry passengers on its trains for the transportation of freight. The plaintiff's right to ride upon the train in question could only be acquired by complying with rule 167. No pretense is made that he has done so, and the fact that the station agent of defendant promised to give the conductor the permit does not aid the cause set out in his declaration. *Frederick v. Railroad Co.,* 37

Mich. 343; *Marshall v. Railroad Co.*, 78 Mo. 616; *Railroad Co. v. Kennedy*, 3 Amer. & Eng. R. Cas. 467.

The cause of action set out in the declaration, however, is not the cause of action upon which plaintiff prevailed at the trial. The declaration was framed upon the *theory* that he had a right to ride upon a through freight train without a permit, and he bases his right to recover on the assumption that the conductor wrongfully expelled him. The claim made upon the trial was that the ticket agent agreed, when he sold him the ticket, that he would give the conductor a permit for him to ride upon that train, and that the station agent directed him to take that train, and that he did take it because of the direction so given by the station agent. The station agent positively denies giving any such direction, but says he sold him the ticket, and told him he would try and get him a permit to ride on that train, and he must come to the station and get it before the train left; that he had to telegraph to Battle Creek, to the assistant superintendent, for it. No claim is made by plaintiff that he did call upon the station agent after purchasing his ticket to get the permit, but he claims that he relied upon the agent giving such permit to the conductor.

The court, upon this testimony, charged the jury that—

"This ticket produced in evidence is a ticket for transit on a passenger train, and under this ticket alone the plaintiff would have no right to travel on a freight train. It could only be used by the direction and permission of the railway company, given by Mr. Bowker, its agent, and a special contract to do so, agreed to by both parties. I further charge you that the burden of proof is on the plaintiff to satisfy you, by a preponderance of evidence, that the agent directed him to take that train, and to use this ticket thereon; and, if you are so satisfied, you will find for the plaintiff."

The case was submitted to the jury upon this theory,

and upon no other. This was not the claim made by the declaration. It is well settled that one cannot sue for the breach of one duty, and recover for the breach of another. Plaintiff alleges in his declaration that the ticket agent told him to get aboard the freight train, but makes no claim that such direction was not correct and proper, but, on the contrary, asserts that it was, and that no one was in fault but the conductor. On the trial the case was submitted to the jury on the theory that the agent did misdirect him, and sold him the ticket with the agreement that he could ride on that train with the ticket then purchased. In the declaration the allegation is that the conductor was in fault. On the trial the claim is made that the station agent was in fault. This was a fatal variance, and the plaintiff had no right to recover.

Defendant's counsel requested the court to charge the jury in his fourth request that—

"The conductor on the train in question had the right to require the plaintiff to procure and produce, when requested, a permit from the proper officer of the defendant company, entitling him to a passage on said train, and, upon plaintiff's failing and refusing to procure and produce the same when requested to do so by the conductor in charge of said train, said conductor had the right to insist that the plaintiff should get off from said train, and for which expulsion from said train defendant in this case is not liable."

This request was a proper one, and, under the circumstances here stated, should have been given by the court. The claim set out in the declaration had not been substantiated by the proofs; and the conductor, as found and as charged by the court, was in no fault. The ticket itself did not entitle plaintiff to be carried there. No permit was produced, and plaintiff was properly expelled from the train. If he had a cause of action against the com-

pany for a breach of contract in the purchase of his ticket, made with the station agent, he should have so stated in his case in his declaration. Not having so stated it, he was not entitled to recover under this declaration.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.