GREENFIELD v. DETROIT & MACKINAC RAILWAY CO.

133 557|
d147 ³433|

1. RAILROADS—PASSENGERS ON FREIGHT TRAINS—RULES.
    Railroad companies have the right to prescribe the conditions on which passengers may ride on freight trains.

2. SAME—VIOLATION.
    One riding upon a freight train by arrangement with the conductor, contrary to a rule of the company known to both, is not a passenger.

3. SAME—PERMITS TO RIDE—WAIVER.

A railroad company may waive a rule forbidding the carrying of passengers on freight trains without a permit, by a long-continued disregard thereof.

4. SAME—EVIDENCE—QUESTION FOR JURY.

In an action for injuries received while riding on defendant's log train, in which it appeared that a rule of the company required persons so riding to have permits, plaintiff testified that he frequently rode without them, and had so ridden when defendant's train-master was aboard; that he had not obtained a permit for a long time, and had never been refused passage. Others testified that it was customary to ride without them, on the payment of fares. The fares and mileage collected were reported to the company. *Held*, to warrant the jury in finding that the rule had been waived.

5. SAME—TRIAL—IMPROPER REMARKS OF COUNSEL.

In an action against a railroad company for injuries to a passenger, defendant's attorney asked plaintiff's attorney to admit that the conductor was killed in the same accident; and plaintiff's attorney replied that ''there is no question about that, and it is a fact that the railroad company settled with the widow." *Held*, that as the trial court, on exception by defendant, immediately stated that the remark was improper, ought not to have been made, and must not be considered by the jury, the judgment would not be reversed therefor.

6. SAME—NEGLIGENT LOADING OF CARS—DEFECTIVE APPURTENANCES—QUESTIONS FOR JURY.

In an action for injuries to a passenger on a log train, caused by the derailment of a car, evidence examined, and *held* to raise a question for the jury:

(1) As to whether logs not chained were properly loaded.

(2) As to the existence of a defect in a car wheel that a proper inspection would have disclosed.

7. SAME—INSTRUCTIONS.

A refusal to instruct that ''if plaintiff was a passenger on defendant's log train, and the accident which caused his injury occurred while the train was being operated in the usual manner in which log trains are operated upon well-managed railroads, and the train was such a train as is usually run for the purpose of carrying logs on well-managed railroads, then plaintiff cannot recover," was not prejudicial error, in view of the explicit instructions given as to the particular acts of negligence relied on.

Error to Alpena; Emerick, J.   Submitted June 4, 1903.
(Docket No. 26.)   Decided June 23, 1903.

Case by William Greenfield against the Detroit &
Mackinac Railway Company for personal injuries.   From
a judgment for plaintiff, defendant brings error.   Affirmed.

Defendant did a large business transporting logs on its
road north of Alpena.   Plaintiff was a lumber scaler, and
attended to the purchase and shipment of logs over the
road.   He had been so employed during the seasons for
lumbering for about 4½ years previous to January 21, 1900,
when he was injured.   He testified that he was thus occu-
pied for about 27 months, and that he then rode on these
log trains on an average of 10 times per month.

On January 21, 1900, defendant sent a train of 21 cars,
with a competent crew, to Miller's Spur, on the Cleveland
branch of its road, to be loaded with logs.   Some of the
cars were loaded with maple logs, and others with peeled
hemlock logs.   Plaintiff entered the caboose for carriage
to Alpena.   During the run, a log fell from one of the
cars in front of the caboose.   The forward end struck a
stump, and the other end struck the axle of one of the
wheels under the caboose, derailing it.   Plaintiff immedi-
ately went on the flat car in front, which had only one
tier of logs on the forward end.   It was necessary to leave
the end of the car next to the caboose free, in order to use
the brakes there if circumstances required.   When the
caboose struck the switch, it was overturned, and carried
the car in front with it, injuring the plaintiff.

The defendant carried passengers, and had mixed trains
for that purpose; that is, freight trains with a passenger
coach attached, and running on schedule time.

Plaintiff brought suit for damages, claiming negligence
on the part of defendant.   The negligence relied on to sus-
tain the judgment is the improper loading of the logs, and
a defective wheel under the caboose.   The record presents
three questions for determination:   (1) Was plaintiff a

passenger? (2) Should the judgment be reversed for the improper language used by plaintiff's attorney upon the trial? (3) Was the defendant guilty of negligence? The facts, so far as essential, are stated in connection with each question discussed.

*Charles R. Henry* and *T. A. E. & J. C. Weadock,* for appellant.

*Dafoe & Scott* and *W. H. Simpson,* for appellee.

GRANT, J. (*after stating the facts*). The important question in the case is the first one.

1. The defendant had verbally instructed the conductors of its log trains to carry no passengers thereon without a permit, and the court so instructed the jury. The contention of the defendant is that plaintiff had knowledge of this instruction, and knew he had no right to ride upon this train as a passenger. The contention of the plaintiff is that he did not know it. It is true that plaintiff at one time knew permits were required, for he admits that he obtained at least 30. He, however, testified that he did not know that imperative instructions were issued to that effect; that he frequently rode without permits, and had so ridden when defendant's train-master was aboard, sometimes paying his fare in money, and again by mileage; that others did so, and that he had not obtained a permit for a year and a half before the accident; that he had never been refused passage by any conductor; and that he entered the caboose, intending to pay his fare. There was also evidence from other witnesses that it was customary for persons to ride on these trains without permits, upon payment of fares. The fares and mileage collected were reported to the company.

There is no doubt as to the law. Railroad companies may prohibit the carriage of passengers upon their freight trains, or prescribe the conditions upon which they may ride thereon. *Thomas* v. *Railway Co.,* 72 Mich. 355 (40 N. W. 463); *Randall* v. *Railway Co.,* 113 Mich. 115 (71 N. W. 450, 38 L. R. A. 666).

Plaintiff could not become a passenger by making an arrangement with the conductor to permit him to ride, contrary to a rule of the company known to both. *McVeety* v. *Railway Co.*, 45 Minn. 268 (47 N. W. 809, 11 L. R. A. 174, 22 Am. St. Rep. 728).

The theory upon which this case was submitted to the jury was that the defendant had waived this rule, and that plaintiff was justified in so believing.  That railroad companies may, through a long-continued, open, and notorious disregard of their rules by their employés, waive their enforcement, is well established.  The instructions of the court upon this question were full and explicit, and it is not necessary to quote them.  Counsel do not criticise them, their sole claim being that there was no evidence upon which to base such instructions.  We think the question was properly submitted to the jury.

2. The conductor of the train was killed in the same accident.  For the purpose of laying the foundation for objecting to testimony as to facts equally within the knowledge of plaintiff and the conductor, the defendant's attorney upon the trial asked the plaintiff's attorney to admit that the conductor was killed, to which plaintiff's attorney replied: "There is no question about that, and it is a fact that the railroad company settled with the widow afterwards for it."  Defendant's counsel excepted to the remark, and the judge immediately stated that it was improper, ought not to have been made, and must not be considered by the jury.  Defendant's counsel urge this as reversible error.  If the presiding judge had not promptly and emphatically censured the plaintiff's attorney for making the remark, and told the jury that they must not consider it, it would have been error, within many decisions of this court.  Such remarks are designed to prejudice the jury, else they would not be made.  My Brethren are of the opinion that, under the circumstances, the case should not be reversed for this error, and I reluctantly assent to their opinion.

3. Defendant's counsel insist that the evidence conclu-

133 MICH.—36.

sively establishes the fact that the logs were properly loaded. Experienced lumbermen, and other experienced persons in transporting logs by cars, witnesses for the defendant, testified that there were two methods of loading cars,—one with the use of chains, and the other without chains; that there is no difference between the two in respect to safety; and that the main object in using chains is to carry larger loads. The chains are bound over the top of the logs, and then other logs are placed loose on top of them to bind the load. They also testified that logs, when properly loaded, sometimes fell off. One of the defendant's witnesses testified that, "if loaded properly, they should be chained.

" *Q.* Are chains always used ?

"*A.* No, sir.

" *Q.* What other way is there for loading properly ?

"*A.* Well, they put in stakes of proper lengths, and proper kind of wood; and then, of course, in loading with stakes, without chains, they could not be loaded so heavy.

" *Q.* What is the purpose of using chains ?

"*A.* Well, to put on a bigger load."

Defendant also introduced evidence that, at the time of the trial, chains were no longer used. The hemlock logs upon this train—at least, those on the car immediately in front of the caboose—were peeled. It is manifest that, in case of a sudden jar upon stopping or starting the train, they would slip more readily than when chained, and more readily than would logs with bark on them. In view of this fact, and the testimony above quoted, we are not prepared to hold, as an undisputed fact, that these logs were properly loaded.

4. There was testimony introduced by plaintiff tending to show that a piece of the flange, about 19 inches in length, was broken out of one of the wheels under the caboose, and that there was an old crack in the outer rim at the place where the break occurred. One of the witnesses, who examined the wheels about 12 hours after the accident, testified:

"I noticed one wheel that was broken. It was nearest to the switch towards Onaway. It had the appearance of being the first one that went off. It came off the rear end of the way-car. The flange to it was broken off. There was about 19 inches broken off.

" *Q.* State how it was broken, and, after it was broken, how it left that part of the wheel.

"*A.* Well, on the flange it had about three-quarters of an inch of rust on it; looked like an old crack; and it struck something and knocked the rest of it.

" *Q.* After it was broken off the wheel, how did it leave the wheel itself?

"*A.* Left the wheel so it had no flange to hold it on the rail for 19 inches.

" *Q.* You examined the wheel, did you?

"*A.* Yes, sir.

" *Q.* Could you find the flange?

"*A.* No; we looked for it, but couldn't find it.

" *Q.* As it was broken off on the wheel, how was the break? State how it looked.

"*A.* Well, it looked as though it was a crack in it, and it got rusted by the weather, or something made it rusted three-quarters of an inch deep. * * * The rest of the break was bright."

The court instructed the jury that if this "was an essential element in the happening of the accident,—that it would not have happened without it,—and that it could have been observed by a proper inspection, the defendant would be negligent in that regard." We think there was evidence justifying the submission of this question to the jury.

5. Complaint is made of the refusal of the court to give the following instruction:

"If the plaintiff was a passenger upon the defendant's log train, and the accident which caused his injury occurred while the train in question was being operated in the usual manner in which log trains are operated upon well-managed railroads, and the train was such a train as is usually run for the purpose of carrying logs on well-managed railroads, then plaintiff cannot recover."

As a general statement of the law, the request is sound. It is subject to criticism, in that it omits any reference to

the specific acts of negligence alleged and relied upon. In view of the explicit instructions of the court upon the subject of the defendant's negligence, we think the refusal to give this request not prejudicial. The court distinctly instructed the jury that if the logs were properly loaded, or if they were liable to fall off when so loaded, plaintiff could not recover. There was no question about the equipment of the train or the method of operating it. The sole acts of negligence charged were the two, and to these alone the jury were specifically directed.

Judgment affirmed.

The other Justices concurred.