## CHICAGO, M. & ST. P. R. CO. v. WALLACE.

(Circuit Court of Appeals, Seventh Circuit. February 23, 1895.)

No. 180.

CARRIERS—COMMON AND PRIVATE.

The C. R. Co. made a special contract in writing with one W., the proprietor of a circus, to haul a special train, consisting of cars owned by W., containing the circus property, equipment, and performers, between certain points, on stated days, at prices specified, which were less than the regular rates of the company for transportation of passengers and freight. It was provided in the contract that, in consideration of the reduced rate and of the increased risks to the property of the railroad company in running such special train, said company should not be liable for any damage to the persons or property of the circus company from whatever cause. It was not the regular business or the custom of the railroad company to haul such special trains of private cars, or to transport persons, animals, and freight on the same trains. *Held*, that the railroad company in carrying W.'s property on such special train acted as a private, and not as a common, carrier; that, as such, it had the right to make the contract, stipulating against liability for damage; and that such contract was binding upon the parties.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The facts in this case are fully and properly stated in the brief of counsel for plaintiff in error, as follows:

"This is a writ of error prosecuted by the Chicago, Milwaukee & St. Paul Railway Company, defendant below, to reverse a judgment of $8,000 recovered against it in the lower court by Benjamin F. Wallace, the plaintiff below, for loss and injury to certain property comprising part of the belongings and equipment of a circus owned by Wallace, and for the loss of performances of the circus caused by two separate accidents happening upon the railroad company's road while it was transporting the circus in a special train composed of cars belonging to Wallace. Plaintiff's declaration is in trespass on the case for negligent violation by defendant of its duty as a common carrier. It contains two counts: The first count avers that on the 7th day of July, 1892, the defendant was possessed of and operating a certain railroad and railroad tracks in the states of Wisconsin and Iowa, and was operating and controlling certain locomotive power and engines up-

on and along its said railroad and tracks; that the plaintiff was the owner of a certain circus known and described as the 'Cook & Whitby Circus,' consisting, besides employés, of a large number of horses, wagons, tents, harnesses, and a large quantity of other property, effects, and paraphernalia, and was also the owner of twenty-four cars; that on the said 7th day of July, 1892, at the city of Prairie du Chien, in Wisconsin, the defendant then and there received, as common carrier, the aforesaid twenty-four cars of the plaintiff, containing the aforesaid property and effects of the plaintiff, constituting said Cook & Whitby's Circus, and the people connected therewith, to be safely transported to the town of Maquoketa, state of Iowa, and to be safely delivered there to the plaintiff on the 8th day of July, before 9 o'clock of the forenoon of that day. The plaintiff avers that it was the duty of the defendant to provide safe, strong, and efficient locomotive power for the transportation of said cars, with the property and effects of the Cook & Whitby Circus, and it was also the duty of the defendant to construct and maintain its tracks and roadbed, at and near the station known as 'Sny Magill,' in the state of Iowa, in a safe and suitable condition; that the defendant negligently failed to provide strong and efficient locomotive power, and negligently failed to construct and maintain its tracks and roadbed in a safe and suitable condition at said point near Sny Magill, and that in consequence four of said cars were damaged, twenty-four horses were killed, other horses injured, and a large amount of harness was damaged; also that by reason of the accident plaintiff was prevented from giving performances of the circus, which he had advertised, in the vicinity of the town of Maquoketa and the city of Davenport, in the state of Iowa, and thereby lost the profits he would have made had he been able to give said performances. The second count of the declaration avers that on the 6th day of July, 1892, the defendant was possessed of and operating and controlling a certain railroad and railroad tracks in the state of Wisconsin, and operating and controlling certain steam locomotive power and engines upon and along the said railroad and railroad tracks; that upon said day the defendant, at the city of Richland Center, in the state of Wisconsin, received as a common carrier the aforesaid twenty-four cars of the plaintiff, containing all the aforesaid property and effects of plaintiff, constituting said Cook & Whitby's Circus, to be transported, by means of fit and adequate locomotive engine power to be furnished by the defendant, over the railroad and tracks aforesaid, from said city of Richland Center, in the state of Wisconsin, to the said city of Prairie du Chien, in the state of Wisconsin, and to deliver the same at Prairie du Chien on the 7th day of July, 1892, at or before the hour of 9 o'clock in the forenoon of that day; that it was the duty of the defendant to have provided safe and proper appliances at a certain switch located at and near a point south of said Richland Center, and to keep proper and sufficient lights and signals placed at and near said switch to indicate whether said switch was open or closed; that the defendant negligently failed and omitted to perform its duty in this regard, and that by reason thereof the locomotive hauling plaintiff's cars was derailed; that the defendant failed to proceed with due and proper diligence to get its locomotive engine back onto the main track, and that in consequence plaintiff's cars were delayed so long that they did not reach the city of Prairie du Chien in time to give performances, which had been advertised there. The defendant pleaded the general issue to the entire declaration, and afterwards a special plea to the jurisdiction of the court, which was subsequently stricken from the files by order of the court.

"On the trial it appeared that the plaintiff's cars and property were hauled by the defendant under a special contract made and executed June 1, 1892, by the railroad company and by the plaintiff, Wallace, through their duly-authorized agents. This special contract reads as follows:

" 'This agreement, made and entered into this 1st day of June, A. D. 1892, by and between the Chicago, Milwaukee & St. Paul Railway Company, party of the first part, and Cook & Whitby Circus, party of the second part, witnesseth: The party of the first part agrees to run a special train, consisting of ten flat cars, six stock cars, six passenger cars, two advertising cars, in all twenty-four cars, to be furnished by the party of the second part, to run between as below, and as below:

Leaving:

| | |
|---|---|
| Shakopee to Hastings, June 29th, | $180 |
| Hastings to Redwing, Jun. 30th, | 180 |
| Redwing to Faribault, Jul. 1st, | 180 |
| Faribault to Decorah, Jul. 2d, | 225 |
| Decorah to Boscobel, Jul. 4th, | 200 |
| Boscobel to Richland Center, Jul. 5th, | 180 |
| Richland Center to Prairie du Chien, Jul. 6th, | 200 |
| Prairie du Chien to Maquoketa, Jul. 7th, | 200 |
| Maquoketa to Davenport, Jul. 8th, | 180 |

" 'Deliver to Chicago, Rock Island & Pacific Railway at Davenport, where they leave our line, and carry on said special train, as before described, the circus property of said party of the second part, together with the people properly connected therewith, so far as the same shall be loaded on said train. The said train to be run so as to arrive at its several destinations at or about 6 o'clock in the morning, provided the same shall be loaded and ready to start in time to reach its several destinations at said hour. In consideration thereof the said party of the second part hereby agrees to pay to the said party of the first part the sums as specified above per day in advance (which said sum is a reduction from the usual and regular rates charged by said party of the first part for transportation services of the kind and nature above specified), the sum to be paid to the agent of the said party of the first part at the station from which the next succeeding run is to be made, it being mutually understood that no charge will be made for the use of train or trainmen on Mondays, when the runs for those days are made on the Sunday immediately preceding; and said party of the second part also agrees to load and unload said cars. In consideration of the agreement of said party of the first part to run said special train as above specified, and at and for the reduced rates above named, and also in consideration that, by the running of said special train as above specified, the said party of the first part increases the risks and dangers of operating its railway, and subjects its own property to a greater liability of being damaged, and in further consideration of the premises, said party of the second part does hereby covenant and agree to release and discharge said party of the first part of and from any and all liabilities for claims and damages of every name and nature, by reason or on account of any accident or injury, from whatever cause, that may occur to, or may be suffered or sustained by, any one, or all, of the persons composing or attached to said circus company, or to the cars or other property of said party of the second part, while in or on said train or upon any of the premises belonging to or used by said party of the first part, or by reason or on account of any delays that may occur in the running of said special train, or by failure to reach the several points of destination at the specified time. And, in and for the consideration last above mentioned, said party of the second part does hereby further covenant and agree that he will protect, and forever hold free and harmless, the said party of the first part, from any and all damages or claims for damages that he or they may sustain or incur by reason of any accident or injury that may happen to or be received by any one or more of the several persons composing or attached to said circus company, or permitted by said party of the second part to ride upon said train, or upon any of the premises belonging to or used by said party of the first part. J. H. Hiland, for the Chicago, Milwaukee & St. Paul Ry. Co. J. M. Hamilton, for Cook & Whitby.'

"The plaintiff offered evidence tending to show that at a point near Sny Magill, on the defendant's road, and while plaintiff's special train was being transported from Prairie du Chien towards Maquoketa, certain of plaintiff's cars were derailed and thrown down an embankment; that as a result twenty-four horses belonging to plaintiff were killed outright, and four others died afterwards from injuries received, and about forty other horses were permanently injured; also that serious injury was done to a large number of sets of harnesses belonging to the plaintiff, as well as to the cars derailed, and that the plaintiff was prevented from giving, and lost probable profits of, performances of his circus at Maquoketa and Davenport, which he had advertised at considerable expense. Plaintiff's evidence tended to show that the

derailment was caused by defective roadbed at the point of accident, and by reason of the fact that the locomotive used to haul plaintiff's train of cars was light and of insufficient power. Plaintiff's evidence also showed that, on the evening of the 7th of July, plaintiff's special train, after starting from Richland Center towards Prairie du Chien, was stopped by reason of the engine running off the track at a misplaced switch a short distance out of Richland Center; that this accident caused a delay of several hours, and thereby prevented the plaintiff from giving, and lost probable profits of, performances at Prairie du Chien, which he had advertised at considerable expense. His evidence tended to show that the accident was caused by negligence of the defendant, and that the delay was greatly aggravated by the failure of the defendant to take proper steps for replacing the locomotive upon the track. At the close of the plaintiff's case, defendant moved the court to instruct the jury to return a verdict for the defendant, which motion was overruled by the court, and an exception to the ruling duly taken.

"The testimony of the defendant tended to show that the accident at Sny Magill was not caused by the defective condition of the roadbed, or by reason of insufficient power in the locomotive used in the hauling of plaintiff's cars, but was caused by the breaking of an axle under one of plaintiff's cars; and that the accident to the switch at Richland Center, and the delay there, was not caused by any neglect or misconduct of the defendant or its servants. At the close of the evidence, the defendant requested the court to give certain written charges to the jury, instructing them that the defendant was not a common carrier, or subject to the liabilities of a common carrier, in accepting and transporting plaintiff's train of cars, and the property therein contained; that the defendant was therefore not restrained or controlled by rules applicable to contracts made by common carriers in the transaction of their ordinary business; and that the agreement releasing and discharging the defendant from any and all liability for claims and damages, of whatsoever nature, must control the rights of the parties, and should be enforced in favor of the defendant. The court refused all these requests, to which rulings exceptions were duly taken. The court, in substance, instructed the jury that the clause of the special contract exonerating defendant from all responsibility for loss or damage to plaintiff's property from any cause whatever was contrary to public policy, and void, in so far as it covered loss or damage occasioned by the gross negligence of the defendant or its servants, but was valid in all other respects; that if the jury found from the evidence that the defendant was guilty of gross negligence in not furnishing sufficient motive power and in not keeping its roadbed in proper condition, and that the damage to plaintiff was caused thereby, they should find for the plaintiff, notwithstanding the clause in the special contract exonerating defendant from liability. The jury thereupon brought in a general verdict for the plaintiff for $8,000, and the court, after overruling defendant's motion for a new trial, entered judgment on the verdict, and from that judgment the plaintiff in error, the defendant below, prosecutes this writ of error."

Edwin Walker and J. Ralph Dickinson, for plaintiff in error.

William H. Barnum, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge (after stating the facts). Proper assignments of error having been made by plaintiff in error, the main question in this court, as it was below, is whether the railroad company, in carrying the plaintiff's circus people, animals, and outfit, under the special contract in evidence, assumed the relation of a common carrier for hire. If it did, then the verdict must stand. If it did not, then the contract itself was a good defense to the action; and the whole case seems to depend upon this question. The court is of opinion that the railroad company had a right to

make the contract with the defendant in error; that the contract was not against public policy, but was valid and binding upon the parties who made it, according to its terms and conditions. The railroad company is charged in the declaration as a common carrier of the persons and property named in the contract, but the contract itself is wholly ignored, and the declaration framed as though no contract had ever been made. If the plaintiff had the right thus to disregard the contract, and sue the railroad company as a common carrier, the recovery must stand, because in that case the company would be liable for any defect in its roadbed which common, or even extraordinary, prudence and foresight could remedy. It would also be liable for the negligence of its own employés, and for any insufficiency in the engine or engines employed to move the plaintiff's cars, which ordinary prudence and foresight may have remedied. But if the company, in carrying the plaintiff's property under the contract and in the circumstances in which the undertaking was entered into, was not acting as a common carrier of the plaintiff's goods, but in the capacity of an ordinary private carrier for hire, then the company had the right to make the contract, and both parties will be bound by its terms.

That the company, in carrying the goods under the contract, was a private, and not a common or public, carrier, is the conclusion which the court has reached. There was no evidence offered that the railroad company had ever carried similar goods for Wallace before in his own private cars, or that it had ever carried or held itself out to carry goods in that manner for others, and there is no presumption that railroad companies would do so. We know from common observation that they do not hold themselves out as common carriers of wild and domestic animals to be transported in the private cars of the owners, and loaded in a manner agreeable to the owners; persons, animals, horses, and other property being carried upon the same train, which is operated at irregular times and seasons, at the convenience of the owners of such cars. They ordinarily operate their freight trains and passenger trains separately, and upon time schedules, prepared in advance by experts for the company, and with a view to reduce the danger of accident to a minimum. Here was a special contract in writing, wholly different from the ordinary bill of lading, providing for the hauling of a special train of cars, belonging wholly to the defendant in error, to be loaded as he pleased with persons, wild animals, domestic animals, and other property, and to be run on special time, the hours of departure to depend upon the time when the plaintiff should have his cars loaded and ready to start. Wallace was to be wholly responsible for the loading and the unloading as well as for the care of the property while in transit, the only duty of the railroad company being to haul the cars. Another significant provision of the contract is that the property was to be carried at greatly reduced rates, in consideration of which the plaintiff was to assume all the risk of accidents, releasing the company therefrom. If this provision of the contract, as no doubt it was, was binding upon the railroad company, why not upon the plaintiff?

The obligation was mutual. Why could not the railroad company say: "You wish your property carried in your own private cars, which is contrary to our usual rules and regulations, and at greatly reduced rates. You wish your entire circus troupe, horses, animals, and all the paraphernalia and accompaniments of a circus, carried for less money than at our rates as common carriers it would cost you to have the persons alone of your company transported, and you desire that they be carried at special times, also contrary to our rules as common carriers, and which materially increases risks in our business. Now, here are our roadbed and our engines. They have answered our own purposes of transportation fairly well. If you wish to take upon yourself all risk of damage by accident, we will accept your proposition, and carry at the rates proposed." There is nothing unlawful in this, unless we assume that the railroad company cannot carry property or persons at all, except as common carriers, which is against all rule and precedent. No common carriers undertake to carry every species of property, in respect to which they have not held themselves out as common carriers. They may contract as private carriers, and in that case they may make any reasonable contract. The railroad company as a common carrier could not enter into such a contract as this, because it cannot as a common carrier limit the liability imposed upon it from considerations of public policy. But the case is different in respect to property of which it is not a common carrier. If any authority were needed upon so plain a proposition it is not difficult to find. In Hutchinson on Carriers (2d Ed.; § 44) it is stated:

"A common carrier may, however, undoubtedly become a private carrier or a bailee for hire, when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry. The relation in such a case is changed from that of a common carrier to that of a private carrier, and, where this is the effect of a special arrangement, a carrier is not liable as a common carrier, and cannot be proceeded against as such."

Again, at section 73, it is stated:

"And, even as to such carriers as are prima facie public or common carriers, it may be shown that in the particular instance, or under the circumstances of the case, they did not undertake to transport, and are not liable as common carriers."

Again, at section 56a, par. 2, it is stated:

"In the second place, in order to charge one as a common carrier of goods, the goods in question must be of the kind to which his business is confined. No carrier undertakes to carry all kinds of goods, but only such as are of the description which he professes to carry. A common carrier is therefore not liable as such, where, by special agreement, as a matter of accommodation, merely, he undertakes to carry a class of goods which it is not his business to carry."

Again, at section 56b, it is stated:

"Common carriers of goods do not undertake to carry by any or all means, but only by those means and methods, and over the route, to which their business is confined. * * * And even if a carrier should, in a particular instance, undertake, by a special contract, to carry goods by unusual and exceptional methods or routes, his liability would be based on his contract, and not on the ordinary rules governing common carriers."

In the case of Railroad Co. v. Lockwood, 17 Wall. 357, at page 377, the court say:

"A common carrier may undoubtedly become a private carrier, or bailee for hire, when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry."

There are also two recently decided cases, one before the supreme court of Michigan and the other before the supreme judicial court of Massachusetts, where a question almost identical with the one at bar was adjudged in the same way. Coup v. Railway Co., 56 Mich. 111, 22 N. W. 215; Robertson v. Railroad Co., 156 Mass. 525, 31 N. E. 650. The declaration charges the defendant specially as a common carrier. The court held it was not a common carrier in respect to the property which it undertook to carry under the contract, but nevertheless instructed the jury that:

"The contract made it the duty of the defendant to furnish reasonable safe and sufficient motive power to haul the cars of the plaintiff over the specified portion of its road, and the defendant will be liable if it failed, while attempting to perform its contract, to furnish such character of engine or motive power, and damage resulted therefrom to the plaintiff's property or business. And under such contract defendant was bound to have a reasonable safe roadbed, over which the cars and property of the plaintiff could be transported. If its roadbed was not in a reasonably safe condition, but was out of repair, so as to be unsafe and dangerous, and the defendant knew this fact, or by reasonable diligence could have known it, and the derailment of plaintiff's cars, and injury and damages to his property, was occasioned by such insufficient and insecure track and roadbed, then the defendant would be liable for such injury and damage."

—Thus allowing a recovery upon a cause of action nowhere hinted at in the plaintiff's declaration. The plaintiff, if he recover, should recover according to his declaration. Kimball v. Railroad Co., 26 Vt. 247; White v. Railway Co., 2 C. B. (N. S.) 7.

But, independent of this principle, we do not think there is any middle ground upon which to rest a recovery in this case. The railroad company was either liable as a common carrier as charged in the declaration, or it was not, and, if not, then the contract it made with Wallace, by which he assumed the risk of accident, was valid and binding. By the contract the defendant in error assumed all risk from accident, and for a proper consideration released and exonerated the railroad company from all damage occasioned thereby. He has got what he bargained for, or, if not, can sue upon his contract, but he must abide by its conditions. The judgment of the court below should be reversed, and the cause remanded, with instructions to the court below to award a new trial.