Louisville, New Albany & Chicago Railway Co. *v.* Keefer.

Louisville, New Albany & Chicago Railway Co.
*v.* Keefer.

[No. 17,560.    Filed October 1, 1896.]

Carriers.—*Exemption of by Contract, from Liability for Negligence.*—A railroad company cannot, by a contract with a passenger, protect itself from liability resulting from its negligence, while performing a duty it owes to the public as a common carrier. *p. 26.*
Same.—*Under Special Contract with Express Company.*—A railroad company in carrying goods for an express company under a special

agreement with such company is a private carrier of goods and is not performing a duty as a common carrier. *p. 34.*

SAME—*Exemption from Liability by Contract.*—A contract between a railroad company and an express company, by which the latter assumed all risks and damages to its messenger while on the railroad, is binding upon an express messenger who entered into a contract with such express company, thereby assuming all risks of accidents and danger incident to such employment, however occasioned, and thereby empowering such company to enter into a contract exempting the railroad company from all liability for injuries to him. *p. 35.*

From the Greene Circuit Court. *Reversed.*

*Baker & Daniels* and *Davis & Moffett,* for appellant.

*Matson & Giles,* for appellee.

MONKS, C. J.—Appellant was employed as an express messenger by the American Express Company, which was carrying on the express business over the road of appellant between Bedford and Switz City, Indiana. While so employed and engaged in his usual duties on the express car of said train, the place provided by appellant for him to ride, he was injured by the falling of appellant's railroad bridge, and brought this action against appellant to recover damages therefor. A demurrer to the complaint for want of facts was overruled. Appellant answered in three paragraphs, and appellee's demurrers to the second and third of said paragraphs were sustained. The case was tried by a jury and a verdict returned in favor of appellee, and over a motion for a new trial judgment was rendered against appellant. The action of the court in overruling the demurrer to the complaint and in sustaining the demurrer to the second and third paragraphs of answer is assigned as error. It is first insisted that the court erred in overruling the demurrer to the complaint. While the allegations are not as specific and complete as they should have been made,

we have concluded that the complaint is sufficient on demurrer.

The third paragraph of answer avers that the appellee was, at the time of the injury, upon the train and in the express car as a messenger of the American Express Company, in charge of its express matter then therein; that he had not paid or tendered fare or compensation for his carriage, nor had he agreed to pay; that his right to be upon the train was secured to him and to the express company by a contract in writing between the railroad company and the express company, and that he was then riding upon the train in pursuance of the contract and not otherwise, and that the only compensation the railroad was to receive was the compensation to be paid by the express company, under the contract for the express privileges granted it thereby. It is also alleged that appellee, in consideration of his employment by the express company, and at the time thereof, executed a contract in writing—which is set out in the answer—in which appellee covenanted and agreed as follows:

"And, whereas, such express company, under its contracts with many of the corporations and persons owning or operating such railroad, stage or steamboat lines, is or may be obligated to indemnify and save harmless such corporations and persons from and against all claims for injuries sustained by its employes. Now, therefore, in consideration of the premises and of my said employment, * * * * I do hereby assume all risks of accidents and injuries which I shall meet or sustain in the course of my employment, whether occasioned or resulting by or from the gross or other negligence of any corporation or person engaged in any manner in operating any railroad or vessel or vehicle, or of any employe of any such corporation or person otherwise, and whether

resulting in my death or otherwise. And I do hereby agree to indemnify and save harmless the American Express Company of and from any and all claims which may be made against it at any time by any corporation or person under any agreement which it has made, or may hereafter make, arising out of any claim or recovery upon my part or the part of my representatives, for damages sustained by reason of my injury or death, whether such injury or death result from the gross negligence of any person or corporation or of any employe of any person or corporation or otherwise.

"And I hereby bind myself, my heirs, executors and administrators with the payment to such express company, upon demand, of any sum which it may be compelled to pay in consequence of any such claim, or in defending the same, including all counsel fees and expenses of litigation connected therewith. I do further agree that in case I shall at any time suffer any injury, I will at once, without demand, and at my own expense, execute and deliver to the corporation or person owning or operating the railroad, stage or steamboat line upon which I shall be so injured, a good and sufficient release, under my hand and seal, of all claims, demands and causes of action arising out of such injury, or connected with or resulting therefrom.

"I do hereby ratify all agreements heretofore made by said express company with any corporation or persons operating any railroad, stage or steamboat line in which such express company has agreed in substance that its employes shall have no cause of action for injuries sustained in the course of their employment upon the line of such contracting party, and I agree to be bound by each and every such agreement in so far as the provisions thereof relate to injuries sustained by employes of the company are concerned, as fully as

if I were a party thereto. And I do hereby authorize and empower said express company at any time while I shall remain in its service, to contract for me and in my behalf, in its own name or in mine, with any corporation or person operating any railroad, stage or steamboat line, for my transportation as messenger or employe, free of charge, upon the condition and consideration that neither I nor my personal representatives, nor any person claiming under me, will make any claim for compensation because of any injury sustained by me, whether resulting from the gross negligence of such corporation or persons, or of any employe of such corporation or persons or otherwise, and the contracts so made shall be as binding and obligatory upon me as if signed and delivered by me. And I do further agree that the provisions of this agreement shall be held to inure to the benefit of any and every corporation, and to all persons upon whose railroads, stage or steamboat lines the American Express Company shall forward merchandise, as fully and completely as if made directly with such corporation or persons."

That under the contract between the express company and appellant, said express company was granted express privileges and facilities on the railroad lines of appellant, and the express company agreed with appellant that, "It is mutually understood and agreed by and between the parties hereto, that the express company will assume all risks and damages to its property, freight and valuable packages, and also assume all risks and damages to its agents and messengers on the said road."

Appellee insists that a common carrier cannot protect itself by contract from liability for negligence to a person riding as appellee was on appellant's train,

for the reason that such a contract is void as against public policy.

This is a correct statement of the law in this State where the carrier is at the time performing a duty it owes to the public as a common carrier. A common carrier may, however, become a private carrier or bailee for hire where, as a matter of accommodation or special engagement he undertakes to carry something which it is not his business to carry. *Railroad Co. v. Lockwood*, 17 Wall, on p. 377; *Coup v. Wabash, etc., R. W. Co.*, 56 Mich. 111, 56 Am. Rep. 374; 22 N. W: 215; *Robertson v. Old Colony, R. R. Co.*, 156 Mass. 525, 32 Am. St. Rep. 482; 31 N. E. 650; *Chicago, etc., R. W. Co. v. Wallace*, 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161.

Was appellant, in the carriage for the express company of goods and appellee its agent in charge thereof, performing a duty as a common carrier, or was it performing a service foreign to its duties as a common carrier, and which it could not have been compelled to perform? Railroad companies are not required by usage or common law to transport the traffic of independent express companies over its lines in the manner in which the traffic is usually carried and handled, and they need not, in the absence of a statute requiring it, furnish to such express companies equal facilities for doing an express business upon their passenger trains. *Sargent v. Boston, etc., R. R. Corp.*, 115 Mass. 416; *Express Cases*, 117, U. S. 1.

In the case last cited, the railroad companies had undertaken to perform for the public the express business, before that time done over the same lines by express companies. The express companies applied for space in the express cars for their goods and messengers, and the railroad companies refused to furnish the space or carry their messengers, and these suits

were brought to compel the railroad to furnish the desired express facilities. The court held that it was not the duty of railroads to carry the goods and messengers of express companies, and that a railroad in such service was not performing a duty it owed to the public as a common carrier. That such right could only be acquired by an express company by contract with the railroad company. The court, by Mr. Chief Justice Waite, said:

"The reason is obvious why special contracts in reference to this business are necessary. The transportation required is of a kind which must, if possible, be had for the most part on passenger trains. It requires not only speed, but reasonable certainty as to the quantity that will be carried at any one time. As the things carried are to be kept in the personal custody of the messenger or other employe of the express company, it is important that a certain amount of car space should be specially set apart for the business, and that this should, as far as practicable, be put in the exclusive possession of the expressman in charge. As the business to be done is 'express,' it implies access to the train for the loading at the latest, and for unloading at the earliest, convenient moment. All this is entirely inconsistent with the idea of an express business on passenger trains free to all express carriers. Railroad companies are by law carriers of both persons and property. Passenger trains have from the beginning been provided for the transportation primarily of passengers and their baggage. This must be done with reasonable promptness and with reasonable comfort to the passenger. The express business on passenger trains is in a degree subordinate to the passenger business, and it is consequently the duty of a railroad company in arranging for the express to see that there is as little interference as

possible with the wants of passengers. This implies a special understanding and agreement as to the amount of car space that will be afforded, and the conditions on which it is to be occupied, the particular trains that can be used, the places at which they shall stop, the price to be paid, and all the varying details of a business which is to be adjusted between two public servants, so that each can perform in the best manner its own particular duties. All this must necessarily be a matter of bargain, and it by no means follows that, because a railroad company can serve one express company in one way, it can as well serve another company in the same way, and still perform its other obligations to the public in a satisfactory manner. * * * * The railroad company performs its whole duty to the public at large and to each individual, when it affords the public all reasonable express accommodations. If this is done the railroad company owes no duty to the public as to the particular agencies it shall select for that purpose. * * *

"The exact question, then, is whether these express companies can now demand as a right what they have heretofore had only as by permission. That depends, as is conceded, on whether all railroad companies are now by law charged with the duty of carrying all express companies in the way that express carriers when taken are usually carried, just as they are with the duty of carrying all passengers and freights when offered in the way that passengers and freights are carried. The contracts which these companies once had are now out of the way, and the companies at this time possess no other rights than such as belong to any other company or person wishing to do an express business upon these roads. If they are entitled to the relief they ask it is because it is the duty of the rail-

road companies to furnish express facilities to all alike who demand them."

In the case of *Coup* v. *Wasbash, etc., R. W. Co., supra,* the plaintiff, the proprietor of a circus, sued the defendant railway company, as a carrier, for injuries to the proprietor's cars and equipment and to persons and animals, received by reason of a collision of two trains on defendant's road while plaintiff's circus train was being hauled over the road under a special contract exempting the railroad company from liability for such injuries, although caused by the negligence of defendant's servants.

The railway company, under the contract, furnished the engines and train crews to transport plaintiff's cars loaded with circus performers, animals, tents, etc., and the contract provided that plaintiff was to pay a certain fixed sum "for the use of said machinery, motive power and men, and the above mentioned privileges," the price "for the run" to each of several cities to be paid at the times named therein. It was stipulated that the defendant did not act, in the premises, "as a carrier," but merely as a "hirer of said machinery, motive power, right-of-way, and of the men to move and work the same," etc. The contract provided that the railway company should not be responsible for injury resulting from its own negligence "in running the cars or otherwise," and provided that two advertising cars of plaintiff should be hauled in defendant's passenger trains. The circus train ran in two "sections." The forward one—for some cause not shown—was stopped and the second section was allowed to collide with it, causing the injuries sued for. It was held that it was legal and proper in such a contract to stipulate that the railroad company should not be responsible for damages caused by its negligence. The court, by Campbell, J., said:

"Unless this undertaking was one entered into by defendant as a common carrier, there is very little room for controversy. * * * If it was not a contract of common carriage we need not consider how far in that character contracts of exemption from liability may extend. In our view it was in no sense a common carrier's contract, if it involved any principle of the law of carriers at all. * * *

"It cannot be claimed on any legal principle that plaintiff could, as a matter of right, call upon defendant to move his train under such circumstances and on such conditions, and if he could not, *then he could only do so on such terms as defendant saw fit to accept.* * * * We think the defendant was not liable in the action, and it should have been taken from the jury and a verdict ordered of no cause of action."

A case very similar to the last was the Massachusetts case of *Robertson* v. *Old Colony R. R. Co., supra.* In that case the plaintiff was an employe of a circus proprietor and sued for injuries received while he was riding over defendant's road in a car of his employer, which was being hauled under a special contract. The trial court ordered a verdict for defendant. The court, in affirming the case, said:

"Unless the defendant was under a common law or statutory obligation to carry the plaintiff in the manner he was carried at the time of the accident, it did not stand towards him in the relation of a common carrier, and the plaintiff cannot recover." The contract provided for hauling the cars of the circus, and the circus proprietor assumed all risk and agreed to "exonerate and save harmless" the defendant "from any and all claims for damages to persons and property." "This contract," the court said, "the defendant had the right to make, as it was under no obligation to draw the cars as a common carrier."

In *Chicago, etc., R. W. Co.* v. *Wallace, supra,* the United States Circuit Court of Appeals (7th district), held that when a railroad company by special agreement, hauls the cars and property of a circus over its lines, it is not a common carrier, but is acting outside of its duties as such, and therefore may lawfully contract for entire exemption from liability for its negligence. The court said: "But if the company, in carrying the plaintiffs' property under the contract and in the circumstances in which the undertaking was entered into, was not acting as a common carrier of the plaintiff's goods, but in the capacity of an ordinary private carrier for hire, then the company had the right to make the contract, and both parties are bound by its terms. That the company, in carrying the goods under the contract, was a private, and not a common or public, carrier, is the conclusion which the court has reached." See also *Hartford, etc., Ins. Co.* v. *Chicago, etc., R. W. Co.,* 70 Fed. 201.

In *Bates* v. *Old Colony R. R. Co.,* 147 Mass. 255, 17 N. E. 633, an express messenger was injured while riding as messenger in a baggage car in a passenger train. The contract by which the express company's freight and messenger were carried provided that the messenger should be in the express car, and that the railroad company would issue to him "a season ticket" at season-ticket rates, being below regular full fare. The contract between the two companies further provided that the express company and its messengers should "assume all risks of accidents and injuries," and that the railroad company should be free and discharged from all claims and demands growing out of any injuries received by the messenger while on the road.

The messenger, at the request of the express company, executed and delivered to the railroad company,

in pursuance of the agreement between the two companies, an agreement reciting that by the rules of the railroad company passengers were not permitted to ride in the baggage cars, and reciting that the passenger was the holder of a "season ticket" and was an express messenger, and as such desired to ride in the baggage car "for the more convenient dispatch of his business" as such; the agreement then continued "that in consideration of said company allowing him to ride in the baggage cars on its trains, the undersigned will assume all risk of accidents and injuries resulting therefrom, and will hold said company free and discharged from all claims and demands in any way growing out of any injuries received by him while so riding."

The messenger executed this agreement unwillingly, and only because he understood that he could not retain his employment as messenger unless he did execute it. The season ticket prohibited its use for express business, but had stamped upon it a statement that "the holder of this ticket, having released the company from all liability, will be permitted to ride on the baggage car."

There was a notice posted in the baggage car, and the rule it announced was uniformly enforced, that "No passenger will be allowed to ride in the baggage car on any train unless he has signed a release discharging the company from all claims and demands in any way growing out of any accident or injuries while riding in such car," etc. It happened that in this case the injury would not have been received if the messenger had been in the passenger car instead of the express car.

The court held that the contract was binding and worked a release of such injuries as were received by

reason of the plaintiff's riding in the baggage car. The court said:

"The question of the right of carriers to limit their liability for negligence in the discharge of their duty as carriers by contracts with their customers or passengers in regard to such duties, does not arise under this contract as construed in this case. See *Railroad Co.* v. *Lockwood,* 17 Wall. 357; and *Griswold* v. *New York, etc., R. R. Co.,* 53 Conn. 371, 4 Atl. 261. It was not a contract for carriage over the road, but for the use of a particular car. The consideration of the plaintiff's agreement was not the performance of anything by the defendant which it was under any obligation to do, or which the plaintiff had any right to have done. It was a privilege granted to the plaintiff. The plaintiff was not compelled to enter into the contract in order to obtain the rights of a passenger."

In a later case in the same court, *Hosmer* v. *Old Colony R. R. Co.,* 156 Mass. 506, 31 N. E. 652, an express messenger riding in the baggage car under a similar contract and with a similar ticket, was injured in a wreck which involved the whole train, and in which many passengers in the ordinary passenger cars were killed and others injured. The train was derailed by defendant's negligence. The court refers to the case in 147 Mass., and states that the decision was then limited to injuries occasioned by riding in the baggage car, and did not involve the application of the release to injuries otherwise received. The court said:

"This question is now presented to us, and we are of opinion that the contract does include such injuries. The contract, after reciting that the railroad company does not allow passengers to ride in the baggage cars of any of its trains, and that the undersigned (the

plaintiff) 'is desirous of riding in such car for the more convenient dispatch of his business as an expressman,' proceeds as follows: 'It is understood and agreed that, in consideration of said company allowing him to ride in baggage cars on its trains, the undersigned will assume all risks of accident and injuries resulting therefrom, and will hold said company free and discharged from all claims and demands in any way growing out of any injuries received by him while so riding.'

"It seems to us that the nature and fair import of the words used was that the plaintiff should take the risk of all injuries received by him while riding in the baggage car, however arising. The place where he was riding was one in which the defendant was under no obligation to carry him. The contract gave the plaintiff a privilege which he sought for his own convenience. That it was a valid contract cannot be questioned since the decision in *Bates* v. *Old Colony R. R. Co.*, 147 Mass. 255, 17 N. E. 633. See also *Quimby* v. *Boston, etc., R. R. Co.*, 150 Mass. 365, 23 N. E. 205."

Under the doctrine declared in the Express Cases, *supra*, the property was being carried by appellant, not as a common carrier in the performance of a public duty, but being carried, with a messenger in charge, as a private carrier, the right to have it and him carried having first been secured to the express company by private contract, the only way known to the law by which the right, either as to the goods or appellee as express messenger in charge, could be acquired.

Appellee, when he went upon the appellant's train and took charge of the express packages in the baggage car, did not go as a passenger who merely desired to be carried on the train from one point to another. Carriage was not the object of his going upon

the train, that was merely incidental. His purpose was not to be upon the train, in the cars provided for passengers, but that he might handle and care for the property of his employer thereon, in the space set apart in the baggage car for that purpose. Under the authorities cited, it was not the duty of appellant, as a common carrier, to carry for the express company the goods or messenger in charge of them. The contract between appellant and the express company gave it and its messenger rights which appellant as a common carrier could not have been compelled to grant. *Express Cases, supra; Bates v. Old Colony R. R. Co., supra; Hosmer v. Old Colony R. R. Co., supra.*

The contracts set out in the third paragraph of answer were not in regard to any duties appellant was required to perform as a common carrier, nor did such contracts attempt to limit the liability of appellant for negligence in the discharge of its duties as a common carrier, the same are therefore binding upon all the parties thereto. Appellee by his contract assumed all the dangers of the trip however occasioned, and undertook and agreed to release and discharge appellant from all liability if he in any way should be injured in his person by the negligence of appellant, and authorized and empowered the express company to enter into a contract exempting appellant from all liability for injuries to appellee. The contract of the express company with appellant was therefore binding upon appellee the same as if he had executed it in person. It follows that the court erred in sustaining the demurrer to the third paragraph of answer.

It is not alleged in the second paragraph of answer that the express company or appellee in any contract with appellant ever assumed any risks or damages of any kind, or that the appellant had notice or knowledge of the terms of the agreement between appellee

and the express company. The mere fact that appellee had entered into the contract alleged with the express company would not entitle appellant to the benefit thereof. The court did not err in sustaining the demurrer to the second paragraph of answer.

Judgment reversed, with instructions to overrule the demurrer to the third paragraph of answer, and for further proceedings not inconsistent with this opinion.