Malott v. Weston—51 Ind. App. 572.

---

## MALOTT, RECEIVER, v. WESTON.

[No. 7,567.   Filed April 17, 1912.   Rehearing denied October 18, 1912.   Transfer denied December 12, 1912.]

1. CARRIERS.—*Carriage of Passengers.—Personal Injuries.—Limitation of Liability.*—One riding on a pass issued to him gratuitously is not a passenger for hire, and is bound by conditions thereon releasing the carrier from any and all claims for injuries.   p. 575.

2. CARRIERS.—*Carriage of Passengers.—Passenger for Hire.—Verdict.—Conclusiveness.*—A verdict for plaintiff, in an action for injuries received in a railroad accident while riding on a pass, if supported by evidence, conclusively settles that he was a passenger for hire, and not a mere gratuitant.   p. 575.

3. CARRIERS.—*Carriage of Passengers.—Personal Injuries.—Evidence.—Verdict.*—In an action by plaintiff for injuries received while riding on a railroad pass, where the evidence showed that as a result of negotiations opened by defendant, plaintiff located his factory on defendant's line, in consideration of which defendant bound itself to make certain rates on freight and to build side tracks for plaintiff's benefit, and that as a part of the agreement defendant was to furnish transportation to plaintiff, that all the terms of the agreement were carried out and the pass issued before plaintiff's factory was moved, and that each year thereafter a pass was issued to plaintiff, a verdict for plaintiff conclusively settled that plaintiff was a passenger for hire.   p. 575.

4. CARRIERS.—*Carriage of Passengers.—Personal Injuries.—Limitation of Liability.—Public Policy.*—A contract exempting a common carrier from the consequences of its own negligence in in-

juring a passenger is against public policy, and void; but such a contract in a pass issued by a private carrier, is valid, although issued for a consideration, if it is accepted and used with knowledge of the conditions. p. 576.

5. CARRIERS.—*Carriage of Passengers.—Personal Injuries.—Passenger Traveling on Pass.—Common Carrier.—Liability.*—Where a railroad company issued a pass to plaintiff as one of the inducements to secure the location of plaintiff's factory on its line, whereby defendant anticipated benefits in its capacity as a public carrier, it acted as a common, and not a private, carrier in transporting plaintiff on the pass so issued, and a stipulation therein contained releasing defendant from liability for injuries to plaintiff was void. p. 578.

6. APPEAL. — *Review. — Instructions. — Refusal.* — In an action against a railroad company for personal injuries to plaintiff who was traveling on a pass issued to him by defendant as one of the inducements for locating his factory on defendant's line, instructions tendered by defendant on the theory that the pass was issued and accepted as a mere gratuity and that a stipulation contained therein exempting defendant from liability for injury was binding on plaintiff, were properly refused. p. 583.

From Superior Court of Marion County (67,972) ; *James M. Leathers,* Judge.

Action by Edward B. Weston against Volney T. Malott, receiver of the Terre Haute and Indianapolis Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.

*Oscar M. Gottschall* and *Hawkins & Hawkins,* for appellee.

ADAMS, J.—Appellee was injured on October 15, 1902, while a passenger on one of appellant's trains running from the city of Indianapolis to the city of Terre Haute. The sufficiency of the complaint is not challenged, and no question is presented, either as to the extent of appellee's injuries or as to the amount of the recovery.

The complaint was answered by denial, and by a second paragraph of answer alleging that "the plaintiff did not pay or tender any fare for passage upon the train upon which

he alleges in the complaint he was a passenger, but he was traveling upon said train on a free pass which was issued to him and accepted by him as a pure gratuity, and which contained a stipulation, agreed to by the plaintiff, that by its acceptance and use any and all claims for injuries to person or for loss or damage to baggage that might accrue to the plaintiff are released.''

Appellee replied to this paragraph of answer, admitting that he was traveling on a pass issued to him by appellant, but denying that the same was accepted by him as a pure gratuity; that the transportation so furnished to him by appellant was in pursuance of a contract between appellant and the Weston Paper Company, made and entered into between said company and appellant in the year 1900, whereby it was agreed between the parties that if said paper company would remove its factories from Greenfield, Indiana, to Terre Haute, Indiana, on the line of the railway of appellant, among other considerations for said removal, and the benefits to be derived by appellant from having said mill and factories located on its road at said point, that transportation should be furnished to said paper company for the use of one of its officers over the Vandalia lines, and that said contract continued and was in full force during the year 1902; that said pass was issued by appellant, as receiver for the Terre Haute and Indianapolis Railway Company, appellee having been designated as the officer of the Weston Paper Company to use said transportation, and he was using the same, as furnished under said contract, at the time the accident occurred, in pursuance of the business of said paper company.

The reply also admitted that said pass had the stipulation on the back thereof as set out in the answer, but the same was not agreed to by appellee, and the transportation so furnished said company for appellee was for the business of said company, and had no conditions attached thereto to which appellee agreed.

Appellant demurred to appellee's reply to the second paragraph of answer, which demurrer was overruled by the court. Trial by jury, verdict and judgment for appellee.

Appellant assigns as error and relies for reversal on the overruling of the demurrer to the reply to the second paragraph of answer, overruling the motion to direct the jury to return a verdict in appellant's favor, and overruling appellant's motion for a new trial. By these specifications of error two principal questions are presented: (1) Was appellee at the time of his injury a passenger of appellant for hire? (2) If so, Was the stipulation in the contract releasing appellant from all claims for injuries one which appellant could lawfully make and enforce?

It is well settled that if the pass on which appellee was riding at the time of his injury was a pure gratuity, he was not a passenger for hire, was bound by the conditions releasing appellant from any and all claims for injuries, and, therefore, could not recover. *Payne* v. *Terre Haute, etc., R. Co.* (1902), 157 Ind. 616, 62 N. E. 472, 56 L. R. A. 472; *Northern Pac. R. Co.* v. *Adams* (1904), 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513; *Boering* v. *Chesapeake Beach R. Co.* (1904), 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742.

Whether appellee was a gratuitant or a passenger for hire was a question of fact for the jury, to be determined from the preponderance of the evidence, and where the jury, as in this case, found a general verdict in favor of appellee, that question must be deemed in this court to be settled, if the record discloses any evidence supporting the verdict. *Boering* v. *Chesapeake Beach R. Co.*, *supra*.

The evidence shows that negotiations were opened up in the year 1900, by the general freight agent and the commercial agent for appellant with appellee, for the purpose of inducing appellee to locate the mill of the Weston Paper Company at Terre Haute, Indiana, and

on appellant's line of railway. As a result of these negotiations appellant leased a factory site to the Weston Paper Company for a term of fifty years, at a nominal rental of $1 per year, and bound itself to make certain inbound rates on coal, straw and other raw materials, as well as outbound rates on the product of the mill to certain competitive points. Appellant also agreed to build side tracks, including an elevated track for coal, for the use and convenience of appellee.

Appellee testified upon the trial that as a part of the agreement appellant was to furnish transportation for one of the officers of the company. Mr. Kendall, the commercial agent, testified that after consultation with Mr. Taylor, the general freight agent of appellant, he made an absolute promise to secure transportation for appellee. Mr. Taylor, in his testimony, was uncertain, but admitted saying that the matter might be arranged; that the railroad company was liberal in the matter of transportation, and it was taking care of other people. Mr. Malott, the receiver, testified that the pass was made out and forwarded to appellee after a letter was received by him from Mr. Kendall advising the issuance of the same. All the terms of the agreement were carried out by appellant, and the pass was issued before the plant was moved in 1901. A similar pass was again issued in 1902, and every year thereafter up to and including the year 1905. It is clear that there was some evidence supporting the contention of appellee, and the general verdict in his favor, by which he was found to have been a passenger for hire, must be deemed to be conclusive as a question of fact.

A more important and a more difficult question is presented on the second branch of the case, which is, assuming that the pass was not a gratuity, but was issued for a consideration, Did appellant contract as a common carrier or as a private carrier? If as a common carrier, the contract exempting appellant from the consequences of its own negligence was void, as against public policy.

4.

*Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 17 Am. Rep.

719; *Ohio, etc., R. Co.* v. *Nickless* (1880), 71 Ind. 271; *Louis-ville, etc., R. Co.* v. *Faylor* (1890), 126 Ind. 126, 25 N. E. 869; *Louisville, etc., R. Co.* v. *Keefer* (1896), 146 Ind. 21, 44 N. E. 796, 38 L. R. A. 93, 58 Am. St. 348.

The reason for the rule is expressed with clearness in the case of *Payne* v. *Terre Haute, etc., R. Co., supra,* in which it is said: ''Railroads, by reason of physical conditions, are natural monopolies. In most instances, the public are restricted to a choice of using a certain line or none. The corporations, created by the State, are granted special privileges, in return for which they are held, among other things, to undertake to use due care and diligence in transporting passengers and goods. They owe this duty to the public generally. They owe the further duty, as common carriers, to transport, on equal terms of service and compensation, all who apply. The person who is practically constrained to patronize a certain road and the corporation that operates the road are not on a footing of equality in contracting. If the corporation was permitted to impose, as one of the terms of the contract, a waiver of its negligence upon one customer, it could practically upon all, and thereby, while claiming the benefits of its franchise, evade the performance of a public duty, which was one of the chief considerations of the grant. Therefore, it is held, a contract, by which a common carrier assumes to abandon a duty it owes to the public generally, is void as being against public policy.'' But if the pass was issued by appellant as a private carrier, even for a consideration, and was accepted and used by appellee, with knowledge of the conditions attached, the contract against liability was not void as being against public policy. *Louisville, etc., R. Co.* v. *Keefer, supra; Pittsburgh, etc., R. Co.* v. *Mahoney* (1897), 148 Ind. 196, 46 N. E. 917, 47 N. E. 462, 40 L. R. A. 101, 62 Am. St. 503; *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 61 N. E. 678, 55 L. R. A. 253, 87 Am. St. 214.

In the two cases first cited, the court held that a railroad company was not required to carry cars for express companies engaged in the business of transporting express matter, as a duty owing to the general public, and one that the general public had a right to compel the carrier to undertake, and, therefore, where an express messenger was injured, the railroad company could rely on its contract of nonliability with the express company as a valid defense. To the same effect is the case last cited, where the injured party was a porter on a Pullman sleeping-car, and it was held that in carrying Pullman cars the railroad company was acting in the capacity of a private carrier, and could lawfully contract against liability for injuries to employes of the Pullman company.

But the facts disclosed by the record before us are not the facts in the cases cited, and we are not aided in determining the character and capacity in which appellant acted when the pass was issued to appellee, or the status of appellee as a passenger while using the same. The controlling question is, Was appellant, in the light of the facts shown by the evidence in this case, a private carrier or a public carrier?

It will hardly be contended that appellant opened negotiations and concluded a contract with appellee for any other or different purpose than that of increasing its business, not as a private carrier, but as a public carrier. It made inducements of great value, a part of which was the issuance of the pass, to secure the mill of appellee on its line of railroad, in anticipation of profits by freight tendered to it as a public carrier, and which it was bound to accept and transport when tendered. The pass could not be deemed to be anything less than an incident to the increased business accruing to appellant as a common carrier by virtue of the agreement.

In the case of *Ohio, etc., R. Co.* v. *Selby, supra,* the injured person was riding on a pass known as a drover's pass,

having indorsed thereon a signed statement exempting the company from liability for loss or injury resulting from its negligence. At page 492 the court said: "In our opinion, the appellee was not riding on a free pass. It is well settled that a person travelling on a pass, such as was given in this case, for the purpose of taking care of his stock on the train, is a passenger for hire. A person who receives a free pass as part of a transaction beneficial to the carrier * * * is not merely a gratuitous passenger."

In *Ohio, etc., R. Co.* v. *Nickless, supra,* the injured person was also using a stock pass, with the usual stipulation exempting the railroad company from liability on account of negligence. At page 275 the court said: "Taking the allegations of the complaint and answer together, it may be gathered that the plaintiff paid nothing as for his own fare, but that a free pass was given him in consideration of the freight which he paid on his cattle. Under these circumstances, it is clear that the defendant is liable to the plaintiff for the injury done him, charged in the complaint."

In the case of *Lake Shore, etc., R. Co.* v. *Teeters* (1906), 166 Ind. 335, 77 N. E. 599, 5 L. R. A. (N. S.) 425, the court, at page 344, said: "Many years ago this court held, in *Ohio, etc., R. Co.* v. *Selby, supra,* following the forceful decision of *New York, etc., R. Co.* v. *Lockwood, supra* [ (1873), 17 Wall. 357, 21 L. Ed. 627], that a drover in charge of cattle which were being shipped under contract was a passenger for hire, and that it was not competent for the carrier by contract to exempt itself from the consequences of its negligence in the transportation of such a passenger. These holdings have come to express rules of law in this State which are thoroughly established."

The case of *New York, etc., R. Co.* v. *Lockwood, supra,* was one where the injured person was riding on a stock pass, with the usual waiver of liability for negligence. The court held that a common carrier could not lawfully stipulate for exemption from responsibility, when such exemption was

not just in the eye of the law, and that exemption from liability for negligence in that case was not just and reasonable. The court also held that a drover traveling on a pass for the purpose of taking care of stock on the train is a passenger for hire.

*Grand Trunk R. Co.* v. *Stevens* (1877), 5 Otto 655, 24 L. Ed. 535, is a leading case, and follows the principle announced in the foregoing cases, although the party injured was not traveling on a stock pass. The plaintiff, who resided at Portland, Maine, was the owner of a patented carcoupling, and was negotiating with the railroad company for its adoption and use. He was requested to go to Montreal to see an officer of the company in relation to the matter, the company offering to pay his expenses. He was furnished a pass to Montreal, having on its back a stipulation relieving the company from liability on account of any injuries received. While *en route* from Portland to Montreal the train was thrown from the track by reason of a defective rail, and the plaintiff was injured. Suit was brought for damages in the United States Circuit Court, where the plaintiff recovered judgment. Upon appeal to the United States Supreme Court, Mr. Justice Bradley delivered the opinion of the court, and said: ''It is evident that the court below regarded this case as one of carriage for hire, and not as one of gratuitous carriage, and that no sufficient evidence to go to the jury was adduced to show the contrary; and, hence, that under the ruling of this court in *Railroad Co.* v. *Lockwood* [1873], 17 Wall. 357, it was a case in which the defendant, as a common carrier of passengers, could not lawfully stipulate for exemption from liability for the negligence of its servants. In taking this view, we think the court was correct. The transportation of the plaintiff in the defendant's cars, though not paid for by him in money, was not a matter of charity, nor of gratuity in any sense. It was by virtue of an agreement, in which the mutual interest of the parties was consulted. It was part of the consideration

for which the plaintiff consented to take the journey to Montreal. \* \* \* The pass was a mere ticket, or voucher, to be shown to the conductors of the train, as evidence of his right to be transported therein. It was not evidence of any contract by which the plaintiff was to assume all the risk; and it would not have been valid if it had been. In this respect it was a stronger case than that of Lockwood's. There the pass was what is called a 'drover's pass,' and an agreement was actually signed, declaring that the acceptance of the pass was to be considered as a waiver of all claims for damages or injuries received on the train.'' Again in the same opinion, the court used the following language, which we deem pertinent to the question before us: ''It is strongly urged however, that the plaintiff, by accepting the free pass indorsed as it was, was estopped from showing that he was not to take his passage upon the terms therein expressed; or, at least, that his acceptance of the pass should be regarded as competent, if not conclusive, evidence that such a pass was in the contemplation of the parties when the arrangement for his going to Montreal was made. But we have already shown that the carrying of the plaintiff from Portland to Montreal was not a mere gratuity. To call it such would be repugnant to the essential character of the whole transaction. There was a consideration for it, both good and valuable. It necessarily follows, therefore, that it was a carrying for hire. Being such, it was not competent for the defendant, as a common carrier, to stipulate for the immunity expressed on the back of the pass.''

In *Whitney* v. *New York, etc., R. Co.* (1900), 102 Fed. 850, 43 C. C. A. 19, 50 L. R. A. 615, plaintiff was employed by defendant, a railroad company. He changed to a new employment, still with defendant, stipulating for an increase of wages, and for free transportation to Boston from the city where he was to be employed, for his own convenience and not in connection with going to and from his

work. While traveling to Boston on his own account, and not in connection with any business of the defendant, he was injured by the derailing of a car. The United States circuit court of appeals, in an opinion of great force and clearness, held that the relation of passenger and carrier existed, notwithstanding the pass waived liability for injury arising from negligence, and that plaintiff was entitled to recover. The court said on page 855: "It is urged that the plaintiff was not paying his fare in money, and that he did not stand as one of the public ordinarily stands, in dealing with carriers, because his carriage was a part of an entire contract covering several elements, so that, therefore, both he and the defendant were at liberty to stipulate for such conditions as they might mutually agree upon. In this particular, however, the case of *Railway Co.* v. *Stevens* [*supra*] is essentially in point against the defendant. The defendant also urges that the line of reasoning in *Railroad Co.* v. *Lockwood* [*supra*], which led to the conclusions of the court, embraces several propositions, among which are that of the general public interest in the safe carriage of persons, and that the imposition of conditions by a carrier amounts to an abdication of the essential duties of his employment; and it also presents other references to *Railroad Co.* v. *Lockwood,* for the purpose of showing that, under the relations which the parties in the case at bar bear to each other, they were not within the precise reasons which led to the conclusions of the supreme court. We need not, however, follow through this line of argument, because the question is, what is the rule of law? and not, what are the various reasons out of which the rule was developed? These reasons change and fluctuate from time to time with the progress of events, or with the different views of different judges. The rule which governs this case, as we have already said, is expressly stated in *Railroad Co.* v. *Lockwood* [1873], 17 Wall. 357, 21 L. Ed. 627; and it is so firmly fixed, and has been applied in *Railway Co.* v. *Stevens* [*supra*]

under circumstances so essentially like those at bar, that we seem to be controlled by it, and by its application, as the rule and its application have each been determined by the supreme court. Under this rule, and under its application, the plaintiff below was *qua* passenger at the time of his injury, having given for his passage a valuable consideration, so that public policy will not permit us to enforce the stipulations indorsed on his pass, although he freely assented to them."

Having reached the conclusion that the judgment must be affirmed on the authority of the foregoing cases, it follows that the trial court did not err in refusing to

6.   give instructions tendered by appellant, on its theory of the case; nor do we think the court erred in its rulings on the admission and rejection of evidence.

The judgment is affirmed.

NOTE.—Reported in 98 N. E. 127. See, also, under (1) 6 Cyc. 544; (2) 3 Cyc. 348; (4) 6 Cyc. 578, 579; (5) 6 Cyc. 578; (6) 38 Cyc. 1612. As to the right of carriers to limit their liability to passengers, see 82 Am. Dec. 290. As to the duty and liability of a carrier to persons riding on a free pass, see 61 Am. St. 88; 21 L. Ed. U. S. 627. As to the rights of a person riding on pass or contract for free passage, see 22 L. R. A. 794. As to the validity and effect of stipulation in free pass releasing carrier from liability for negligence, see 48 L. Ed. U. S. 742; 4 Ann. Cas. 557; 12 Ann. Cas. 584. As to the liability of a carrier to passengers traveling on passes or contracts contrary to provisions of statute or Constitution, see 14 L. R. A. (N. S.) 526.