MARTIN L. ARNOLD

*v.*

THE ILLINOIS CENTRAL RAILROAD COMPANY.

1. CARRIER—*limiting liability by contract.* The doctrine is settled in this court that railroad companies may, by contract, exempt themselves from liability on account of the negligence of their servants, other than that which is gross or wilful.

2. CONSIDERATION — *of contract exempting from liability.* As a railway company, having passenger trains sufficient to accommodate the public, is under no legal obligation to carry a passenger on its freight trains, its undertaking to do so, and the extra care and expense required in such case, form a sufficient consideration for a contract made with a passenger restricting and limiting its liability; but the same terms must be extended to, and applied to, all persons desiring to ride on such trains.

3. RAILROADS—*not bound to carry passengers on freight trains.* The law imposes no obligation on railroad companies to carry passengers on freight trains, nor freight on passenger trains. It only requires them to carry both, leaving them to regulate the manner in which it shall be done.

18—83D ILL.

APPEAL from the Circuit Court of Lee county; the Hon. WILLIAM W. HEATON, Judge, presiding.

This was an action on the case, by appellant, against appellee, for negligence in running its freight train on which appellant was being carried as a passenger, whereby appellant was injured.

Appellee pleaded not guilty, and four special pleas. To the latter, appellant demurred. The court sustained the demurrer to the first and second special pleas, and overruled it as to the third and fourth. Appellant abiding by his demurrer to the third and fourth pleas, and refusing to plead over, the court gave judgment for appellee. Appellant took proper exception to the rulings of the court in regard to these pleas, and brings the case here by appeal.

The third plea is as follows:

"And for a further plea in this behalf, said defendant says *actio non*, because it says that, at the time of the commission of said supposed grievances in said declaration alleged, and for a long space of time prior thereto, to-wit: at said county, the said defendant was operating its said railroad from said city of Dixon to said city of Amboy, and carrying and conveying in and upon its cars on said railroad, from said city of Dixon to said city of Amboy, all persons desiring to be so carried and conveyed, and offering themselves to the defendant for that purpose; and, also, for carrying and conveying in and upon its said cars on said railroad, from said city of Dixon to said city of Amboy, all freights and personal property offered to said defendant to be so carried and conveyed; and that said defendant, during all the time last aforesaid, for the purpose of so carrying and conveying the persons aforesaid in a safe and convenient manner, and with the least liability of injury to said persons while being so carried and conveyed, furnished, provided, run and operated upon its said railroad, from said city of Dixon to said city of Amboy, a sufficient number of trains of cars—usually known as passenger trains—each day, to accommodate, carry and convey as aforesaid, with conve-

nience and dispatch, all persons desiring to be carried and conveyed by said defendant as aforesaid, and offering themselves to the said defendant for that purpose; said passenger trains being then and there composed of cars specially constructed and adapted to secure the safety and convenience of all persons being so carried and conveyed thereon; and said passenger trains being then and there operated, run and managed by the said defendant, its agents and employees, with special reference to the transportation of passengers thereon, and with great care, caution, skill and circumspection, so as to prevent accidents and injuries to the persons riding and being carried and conveyed thereon.

"And the said defendant further avers that, during all the time last aforesaid, the cars in said passenger trains were so constructed, and said passenger trains were so operated, run and managed by the defendant and its agents and employees, as to occasion very slight risk of accident or injury to the persons of passengers riding and being carried and conveyed thereon as aforesaid.

"And the said defendant further avers that, during all the time last aforesaid, to-wit: at said county, the said defendant was ready and willing to carry and convey, from said city of Dixon to said city of Amboy, upon its said passenger trains, all persons being desirous of being so carried and conveyed by said defendant, and offering themselves to said defendant for that purpose, for a certain fare or reward, to-wit: the sum of sixty-five cents, to be paid to said defendant by each passenger being so carried and conveyed.

"And the said defendant further avers that, during all the time last aforesaid, to-wit: at said county, the said defendant, for the purpose of carrying and conveying, from said city of Dixon to said city of Amboy, and to other places on its said railroad, all such freights and personal property as should be offered to the said defendant to be so carried and conveyed, furnished, provided, run and operated upon its said railroad, from said city of Dixon to said city of Amboy, and to said other places on its said railroad, certain other trains of cars,

commonly known as freight trains; said freight trains being then and there composed of cars specially built and adapted to the carriage and conveyance of said freights and personal property; said freight trains and the cars composing the same being then and there necessarily less convenient and safe than the said passenger trains for persons to ride and be carried and conveyed thereon; and said freight trains being then and there operated, run and managed by the agents and employees of said defendant with express reference to the carriage of freights and personal property thereon, and with less care, caution, skill and circumspection in preventing accidents and injuries to persons riding and being carried and conveyed thereon than the passenger trains aforesaid, and the carriage of said freights and personal property on said freight trains being then and there, in its nature, necessarily very hazardous to the safety of persons riding and being carried and conveyed on said freight trains.

"And the said defendant further avers that, during all the time last aforesaid, the cars of said freight trains were so constructed, and the said freight trains were so operated, run and managed by the agents and employees of the said defendant, and the carrying and conveying of said freight and personal property on said freight trains was in itself necessarily so hazardous to the safety of persons being carried and conveyed on said freight trains, that all persons riding and being carried and conveyed on said freight trains were thereby necessarily exposed to and incurred much greater hazard, peril and danger of accidents and injuries to their persons, while so riding and being carried and conveyed by said defendant on said freight trains, than persons then and there riding and being carried and conveyed by said defendant upon said passenger trains would then and there be exposed to and incur.

"And the defendant further avers that the defendant, prior to the commission of the said supposed grievances in said declaration alleged, to-wit: on the first day of January, A. D. 1869, to-wit: at said county, in consideration of the premises, through its proper officers, made, ordained and established a

certain rule and regulation respecting the conveyance of pas-
sengers upon the freight trains of said defendant, in and by
which said rule and regulation it was provided, in substance,
that passengers would not thereafter be permitted, under any
circumstances, to ride on the freight trains of the said defend-
ant, unless they had freight train tickets, (meaning certain
tickets then and thereafter issued, sold and delivered by said
defendant to persons desiring to ride and be carried and con-
veyed upon the freight trains of the said defendant, and
entitling the parties receiving the same to ride and be carried
and conveyed on such freight trains; said tickets each contain-
ing the stipulation, undertaking and agreement on the part of
the passenger accepting the same, hereinafter set forth,) of all
which the said plaintiff afterward, to-wit: on the thirtieth day
of December, A. D. 1870, at said county, had notice.

" And the said defendant avers, that said rule and regulation
was a reasonable and valid rule and regulation, and was bind-
ing upon the plaintiff and all other persons desiring to ride
and be carried and transported upon the freight trains of the
defendant.

" And the said defendant avers, that the said plaintiff, well
knowing the premises prior to the commission of the said sup-
posed grievances in said declaration alleged, and while said
rule and regulation was in full force and effect, to-wit: on said
thirtieth day of December, A. D. 1870, at said county, for his
own special convenience and accommodation, applied to the
said defendant to be carried and conveyed by the said defend-
ant upon one of said freight trains of said defendant from said
city of Dixon to said city of Amboy, and applied to the said
defendant to issue, sell and deliver to the said plaintiff a freight
train ticket, then and there entitling the said plaintiff to ride
and be carried and conveyed from said city of Dixon to said
city of Amboy upon such freight train.

" And the said defendant further avers, that the said defend-
ant, thereupon, did then and there, at said special instance and
request of said plaintiff, and for the special convenience and
accommodation of said plaintiff, in consideration of the pay-

ment by the said plaintiff, to the said defendant, of the established and customary fare then and there being charged, demanded and received by said defendant for carrying and conveying persons on said passenger trains from said city of Dixon to said city of Amboy, to-wit: the said sum of sixty-five cents, and of the acceptance by the said plaintiff of and from the said defendant of such freight train ticket, entitling the plaintiff to ride and be carried and conveyed from said city of Dixon to said city of Amboy upon a freight train of the defendant, said ticket containing the express stipulation, undertakings and agreements on the part of said plaintiff hereinafter set forth, and in further consideration of said plaintiff's assenting and agreeing to said express stipulations, undertakings and agreements in said ticket contained, the said defendant did then and there issue, sell and deliver to said plaintiff such freight train ticket, in and by which said ticket the said plaintiff then and there became entitled to ride and be conveyed by said defendant upon said railroad, and upon such freight train, from said city of Dixon to said city of Amboy, subject, however, to said undertakings, stipulations and agreements on the part of the said plaintiff in said ticket contained and hereinafter set forth.

" And the said defendant further avers, that the said plaintiff, in consideration of the premises and of the greatly increased peril, danger and hazard to the said plaintiff by reason of being carried and conveyed upon such freight train, did then and there pay to the said defendant said sum of sixty-five cents, and did then and there accept and receive from said defendant said freight train ticket, and did then and there assent and agree to the said stipulations, undertakings and agreements in said ticket contained, and that in and by said ticket the said plaintiff expressly stipulated, undertook and agreed, in substance, that the person accepting said ticket for passage upon freight trains assumed all risk of accident, and expressly agreed that said defendant should not be liable, under any circumstances, whether of negligence by said defendant's agents or otherwise, for any injury to the person, or for any

loss or injury to the property of the passenger using said ticket, and that the said plaintiff would not consider said defendant as common carrier, or liable to said plaintiff as such.

"And the said defendant further avers, that the said plaintiff, after purchasing, receiving and accepting said ticket of said defendant, as aforesaid, and when said rule and regulation was in full force and effect, to-wit: on the day and year last aforesaid, at the county aforesaid, became and was a passenger upon a freight train then and there running upon said railroad from said city of Dixon to said city of Amboy, and then and there used and rode upon said ticket, and was then and there carried and conveyed by said defendant, under and by virtue of said ticket, upon said freight train from said city of Dixon to said city of Amboy, the said plaintiff then and there using said ticket for that purpose, and that the said plaintiff, then and there, while being so carried and conveyed upon said freight train, and without any negligence on the part of said defendant, and without any gross negligence on the part of the agents and employees of said defendant, received the said supposed injuries in said declaration alleged; and this the said defendant is ready to verify, wherefore it prays judgment," etc.

The stipulation or agreement indorsed on the ticket, referred to in the plea, is as follows:

"NOTICE.—The person accepting this ticket for passage upon freight trains, assumes all risk of accidents, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person or for any loss or injury to the property of the passenger using the ticket, and agrees that he or she will not consider the company as common carriers, or liable to him or her as such."

The fourth plea differed in no substantial respect from the third.

Messrs. BARGE, DENSLOW & DIXON, for the appellant.

Mr. J. M. BAILEY, and Mr. J. I. NEFF, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The objections taken to the judgment of the court below in overruling the pleas, relate chiefly to what is thereby interposed as a contract obligating appellant not to assert a claim for damages on account of the negligence, other than gross, of its servants. It is claimed there is no valuable consideration to support the promise of appellant, and that the object sought thereby to be attained is contrary to public policy.

The doctrine is settled, in this court, that railroad companies may, by contract, exempt themselves from liability on account of the negligence of their servants, other than that which is gross or wilful. *Illinois Central Railroad Co.* v. *Read,* 37 Ill. 484; *Illinois Central Railroad Co.* v. *Morrison,* 19 id. 136; *Western Transportation Co.* v. *Newhall,* 24 id. 466; *Illinois Central Railroad Co.* v. *Adams,* 42 id. 474; *Adams Express Co.* v. *Haynes,* id. 89.

So, also, it has been held the law imposes no obligation on railroad companies to carry passengers on freight trains, nor freight on passenger trains; it only requires them to carry both, leaving it to them to regulate the manner in which it shall be done. *Illinois Central Railroad Co.* v. *Nelson,* 59 Ill. 112; *Illinois Central Railroad Co.* v. *Johnson,* 67 id. 314. If they carry passengers on freight trains, they can not make arbitrary discriminations, and therefore, while they may reasonably require that all persons desiring to be thus carried shall first procure tickets, they must afford reasonable facilities to that end, so that all may have a like opportunity to procure them. *Illinois Central Railroad Co.* v. *Johnson, supra.*

Appellee being under no legal obligation to carry passengers on its freight trains, it follows that a contract, whereby it agrees to do so, must be governed by its own terms, subject only to the qualification that the same terms shall be impartially extended to all who may desire to avail of them. The consideration that supports the promise of appellant is the promise of appellee to carry him, not generally, but *by this particular mode of conveyance,* to which, but for the promise,

he would not be entitled; and it is such as the law deems valuable. It is, presumably, both beneficial to appellant and matter of expense to appellee. Moreover, although it is not important whether it involves a greater burden on appellee to carry by this mode of conveyance than it does by the mode it has specially provided for the carriage of passengers, or less, it being sufficient that the company is under no legal obligation to carry passengers by this mode, and that its agreement to do so is purely voluntary, we think, from the substance of the allegations of the pleas, it is clear that the carriage of passengers by freight trains imposes additional burdens upon the company. It has passenger trains with ample facilities to accommodate *all the travel on its road.* The expense of running these trains is, obviously, not sensibly diminished by diverting a portion of the travel thus provided for to its freight trains. The freight trains are composed of cars constructed for carrying freight, and they are so operated. The carriage of passengers requires stoppages of these trains at convenient places for getting on and off, and what might be proper care in managing and operating the train, if laden with freight only, might, in some instances, be gross negligence if it contained a car filled with passengers. This additional hindrance, and the higher degree of care in operating the train thus rendered necessary, would, of itself, under every definition given of a valuable consideration, be sufficient to support a promise.

With regard to the policy of such contracts, we need but say it would seem, in this respect, impossible to distinguish the present contract from those cases where the contract has been to carry generally, or by regular passenger trains. In such cases, as the authorities before quoted show, it is competent for railroad companies, by contract, to exempt themselves from liability on account of the negligence of their servants which is not gross or wilful. Any objection which might, in this respect, obtain, with regard to the contract set up in the pleas, would equally apply to those.

We see no error in the ruling of the court, and its judgment is affirmed.                                *Judgment affirmed.*