Argued 11 February ; decided 3 March, 1902.

## RICHMOND *v.* SOUTHERN PACIFIC COMPANY.

[67 Pac. 947 ; 25 Am. & Eng. R. Cas. 49.]

CARRIERS—VALIDITY OF LIMITED LIABILITY CONTRACT.

A railroad company which voluntarily designates freight trains to carry passengers, and permits its agents to sell tickets therefor to passengers generally, is a common carrier of passengers by the means so adopted, and its agreement with a passenger, whereby he absolves the company from all liability while riding on such freight trains in consideration of his securing his ticket at a reduced rate, is against public policy, and void : *Honeyman* v. *Oregon & Cal. R. Co.* 13 Or. 352, distinguished.

From Multnomah : ARTHUR L. FRAZER, Judge.

Action for damages by F. L. Richmond against the Southern Pacific Company, resulting in a judgment for plaintiff, from which defendant appeals.                    AFFIRMED.

For appellant there was a brief over the name of *Fenton & Muir,* with an oral argument by *Mr. William D. Fenton.*

For respondent there was a brief over the names of *Chamberlain & Thomas,* and *Otto J. Kraemer,* with an oral argument by *Mr. Geo. E. Chamberlain.*

MR. JUSTICE MOORE delivered the opinion.

This is an action to recover damages for a personal injury. The facts are that plaintiff, having secured from the defendant a 3,000-mile passenger ticket over certain parts of its lines of railway, at 2½ cents a mile, subscribed his name to the following stipulation, among others, indorsed thereon, to wit: ''When used upon any freight train designated to carry passengers, the Southern Pacific Co. is absolved from all liability as a common carrier for loss of life, personal injury, or loss or damage of baggage or property of the party so using this ticket.'' The plaintiff, while riding as a passenger, in pursuance of said ticket, in the caboose of a freight train from Oakland to Eugene, was injured by the sudden checking of the

speed of the train. At the time he was injured said train had been designated by the defendant to carry passengers, and its agents sold tickets to all persons applying therefor at the lawful rate of four cents per mile, and such passengers were permitted, without any restriction, to ride upon said train to or from any station on the defendant's railway in Oregon between Junction City and Roseburg, though two passenger trains passed daily over said railway line. The cause being at issue, a trial was had resulting in a verdict and judgment for plaintiff in the sum of $925, and defendant appeals, assigning as error the action of the court in refusing to grant a judgment of nonsuit, and in giving certain instructions to the jury over its objection and exception.

The only question involved in this appeal is whether a passenger's agreement to absolve a transportation company from all liability as a common carrier, while riding as a passenger upon its freight train, entered into in consideration of his securing a railway ticket at a reduced rate, is void as against public policy. It is contended by defendant's counsel that the railway company, in the discharge of the duty imposed upon it, having furnished adequate passenger trains to accommodate the traveling public, may lawfully enter into a contract with a passenger whereby, in consideration of being carried on a freight train, he exempts the company from all liability for personal injury caused by its negligence or otherwise, and that the validity of such agreement is not impaired by waiving its right to insist upon such contract as to all passengers who may be carried on such train or who may ride thereon by paying a single fare at the full lawful rate. They concede that the rule is general in the state and federal courts, except in Illinois and New York, that a common carrier cannot escape liability from the consequences of its negligence in carrying passengers on trains provided for that purpose; but they maintain that a railway company, not being obliged to carry passengers on a freight train, may contract in relation thereto as a private carrier, and that an agreement of that character is not violative of public policy. Plaintiff's counsel maintain,

however, that the defendant having designated the train upon which their client was riding at the time he was injured to carry passengers, and permitted its agents to sell tickets therefor, and allowed passengers generally to ride thereon, thereby made it a passenger train to all intents and purposes, thus rendering the exception inapplicable, and hence no error was committed in refusing to grant the judgment of nonsuit or in instructing the jury as complained of.

Public policy forbids a railway company from relying upon the terms of a contract entered into with a passenger, whereby he releases it from liability resulting from its negligence while performing a duty it owes the public as a common carrier; but it may become a private carrier, and escape such liability to contract, when as a matter of convenience to, or by special agreement with, a passenger, it undertakes to carry him by means not designated to accommodate the traveling public: *Louisville, etc. R. Co.* v. *Keefer,* 146 Ind. 21 (44 N. E. 796, 38 L. R. A. 93, 58 Am. St. Rep. 348). Thus, an agreement of an express agent to assume all risks of accident, in consideration of being carried in a baggage car, to facilitate his own business, releases a railroad company from liability of injury resulting from a casualty, because the agent is not a passenger, and the carrier is under no obligation to transport him in such car: *Blank* v. *Illinois Cent. R. Co.* 182 Ill. 332 (55 N. E. 332); *Pittsburg, etc. R. Co.* v. *Mahoney,* 148 Ind. 196 (46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503); *Bates* v. *Old Colony Ry. Co.* 147 Mass. 255 (17 N. E. 633); *Hosmer* v. *Old Colony Ry. Co.* 156 Mass. 506 (31 N. E. 652); *Baltimore, etc. R. Co.* v. *Voight,* 176 U. S. 498 (20 Sup. Ct. 385). The reason assigned for the conclusions reached in the cases cited is based upon the theory that the railroad companies permitted the express messengers to ride in places where the companies were under no obligation to carry them, and without such license the agents would have been trespassers and could have been ejected from such cars. In *Bates* v. *Old Colony Ry. Co.* 147 Mass. 255 (17 N. E. 633), Mr. Justice ALLEN, in speaking of the plaintiff's agreement to assume the risk incident to

riding in the place agreed upon, says: "The contract did not diminish the liability of the defendant. It left the risk assumed by the plaintiff in riding in the baggage car what it would have been without the contract; it only secured him against being ejected from the car." In *Hosmer* v. *Old Colony Ry. Co.* 156 Mass. 506 (31 N. E. 652), Mr. Justice LATHROP, in speaking of the plaintiff's assumption of the risk of all injuries received while riding in the baggage car, says: "The place where he was riding was one in which the defendant was under no obligation to carry him. The contract gave the plaintiff a privilege which he sought for his own convenience." In *Pittsburg, etc. Ry. Co.* v. *Mahoney,* 148 Ind. 196 (46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503), the court, in speaking of the agreement entered into between the express company in whose service the decedent was an employe and the right of the latter thereunder, say: "His rights were those of the express company, and could not be greater. He was there by license given the express company, and he could not accept the license, and reject the conditions upon which it was granted."

Where railroad companies, furnishing trackage and motive power, haul the cars of circus and menagerie companies over their lines of railway, in consideration of the latter assuming the risk of injuries incident to the journey, it has been held that such companies and their employes, sustaining damage or injury, could not recover therefor from the railroad companies: *Chicago, etc. Ry. Co.* v. *Wallace,* 66 Fed. 506 (30 L. R. A. 161, 14 C. C. A. 257); *Robertson* v. *Old Colony R. Co.* 156 Mass. 525 (31 N. E. 650. 32 Am: St. Rep. 482); *Coup* v. *Wabash, etc. Ry. Co.* 56 Mich. 111 (22 N. W. 215, 56 Am. Rep. 374); *Forepaugh* v. *Delaware, etc. R. Co.* 128 Pa. 217 (18 Atl. 503, 5 L. R. A. 508, 15 Am. St. Rep. 672). The reason assigned in these cases for enforcing the contracts of exemption from liability is that, as the railroad companies were under no legal obligation to haul such cars, they might lawfully enter into any contract to do so, and as a condition precedent therefor were authorized to limit their ability in case of acci-

dent, thus becoming private carriers in respect to such cars.
In *Wells* v. *Steam Nav. Co.* 2 N. Y. 204, Mr. Justice Bronson,
in speaking of the right of such a carrier to restrict its liabil-
ity, says: ''They are not, like common carriers and innkeep-
ers, bound to accept employment when offered, nor, like them,
are they tied down to a reasonable reward for their services.
They are at liberty to demand an unreasonable price before
they will undertake any work or trust, or to reject employment
altogether, and they may make just such stipulations as
they please concerning the risk to be incurred. They may
become insurers against all possible hazards, or they may say,
'We will answer for nothing but a loss happening through
our own fraud or want of good faith.' In short, the parties
stand on equal terms, and can in this matter, as they may in
others, make just such a bargain as they think will answer
their purpose.''

In the case at bar the question of the defendant's liability,
or its exemption therefrom, under the contract, must be solved
by determining whether it was a common or a private carrier
in respect to the plaintiff at the time he suffered the injury of
which he complains; for if it sustained the relation of a pri-
vate carrier to him his agreement exonerates it from liabil-
ity, but if it was a common carrier in respect to him at that
time the contract is contrary to public policy, and therefore
void. ''A common carrier,'' says Mr. Justice Bradley in
*New York Cent. R. Co.* v. *Lockwood,* 84 U. S. (17 Wall.) 357,
''may undoubtedly become a private carrier, or a bailee for
hire, when, as a matter of accommodation or special engage-
ment, he undertakes to carry something which it is not his busi-
ness to carry. For example, if a carrier of produce, running
a truck boat between New York and Norfolk, should be re-
quested to carry a keg of specie, or a load of expensive furni-
ture, which he could justly refuse to take, such agreement
might be made in reference to his taking and carrying the
same as the parties chose to make, not involving any stipula-
tion contrary to law or public policy. But when a carrier has
a regularly established business for carrying all or certain

articles, and especially if that carrier be a corporation created for the purpose of the carrying trade, and the carriage of the articles is embraced within the scope of its chartered powers, it is a common carrier, and a special contract about its responsibility does not devest it of the character.'' The principle thus so ably illustrated was adopted by this court in *Honeyman* v. *Oregon & Cal. R. Co.* 13 Or. 352 (10 Pac. 628, 57 Am. Rep. 20), in which it was held that where the carrier does not hold itself out as a common carrier of dogs, but, as a matter of accommodation to a passenger who was notified of its rules, permits its servant to receive them, such arrangement can only charge the carrier as a bailee or private carrier.   In the case at bar a special engagement was entered into between the parties, but such agreement was not wholly a matter of accommodation to the plaintiff.   It was rather for their mutual advantage; for it may safely be assumed that, when passenger tickets can be secured at low rates, many persons who would not otherwise travel purchase them for their own advantage. Such purchases necessarily increase passenger traffic, and, if the rate established leaves a margin of profit above the cost of transportation, the increase in the number of passengers ordinarily results in advantage to the railroad company, so that the purchase and sale of the ticket in question may be considered as a source of profit to each party.   The question whether the defendant sustained the relation of a common carrier to the plaintiff at the time he was injured, and therefore is liable to him for the damages sustained, notwithstanding his agreement to assume the risk of injury, and to absolve the defendant from all liability therefor, must hinge upon a proper solution of the inquiry whether it was the defendant's business and duty to carry him on its freight train between the stations indicated.

The law imposes upon the railroad company, as a common carrier, the duty of transporting over its lines all ordinary freight delivered to it for that purpose, and of carrying all passengers against whom no legal objection can be successfully interposed, who have complied with the rules of the company

in respect to securing tickets before entering the cars, if there be sufficient room for their accommodation, leaving to the carrier the privilege of dividing the traffic, and of furnishing separate trains for the accommodation of each; and, having exercised the discretion with which it is vested, thereby regulating the manner in which its business is to be transacted, it is under no legal obligation to carry passengers on freight trains or freight on passenger trains: *Hobbs* v. *Texas & Pac. R. Co.* 49 Ark. 357 (5 S. W. 586); *Arnold v. Illinois Cent. R. Co.* 83 Ill. 273 (25 Am. Rep. 386); *Thomas* v. *Chicago, etc. R. Co.* 72 Mich. 355 (40 N. W. 463); *Elkins* v. *Boston & Maine R. Co.* 23 N. H. 275; *Murch* v. *Concord R. Corp.* 29 N. H. 9 (61 Am. Dec. 631). "A common carrier of passengers," says Judge Thompson in his work on Carriers of Passengers (page 26), "is one who undertakes for hire to carry all persons, indifferently, who may apply for passage." The defendant, having voluntarily designated its freight train to carry passengers between Junction City and Roseburg, thereby became, under the definition adverted to, a common carrier of passengers by the means so adopted, and its special contract in respect to the attempted limitation did not devest it of that character; for, if it is the habit of a railroad company to carry passengers on a freight train, it becomes a common carrier of passengers by that means, and thereby assumes the liabilities of such carriers: *Flinn* v. *Philadelphia, etc. R. Co.* 1 Houst. 469. The defendant was under no legal obligation to carry passengers on its freight trains, but, having notified the public that it would do so between the stations indicated, the train, as long as it was used for that purpose, was a mixed freight and passenger train, thereby imposing upon the defendant all the duties of a common carrier in respect to any passenger riding thereon. The train in question was designed by the defendant to accommodate the traveling public generally, and was not provided for plaintiff's advantage alone, nor did he enjoy any special privileges thereon that were not extended to others. The defendant's undertaking to carry him by the means adopted for that purpose was a part of the performance

of its business, and within the line of its public duty, as long as such train was used to carry passengers. The ticket purchased by plaintiff was secured for five eighths of the regular local fare, and, while he was a commercial traveler whose business compelled him to make extensive journeys, we understand from the transcript that any person could secure such tickets upon application by paying the same price therefor.

Plaintiff having paid value for his ticket, the contract of carriage could not be canceled at pleasure by the defendant, and we do not think a rebate in the price of a local ticket affords a sufficient consideration for the assumption of the risk undertaken, where no special privileges are conferred, for, if this were so, it would follow that the smallest remission from the regular price of a ticket might suffice for exemption from liability. No error having been committed as alleged, the judgment is affirmed.                          AFFIRMED.