[Civil No. 1136.    Filed April 2, 1910.]

[108 Pac. 457.]

SANTA FE, PRESCOTT & PHOENIX RAILWAY COMPANY, Defendant and Appellant, v. GRANT BROTHERS CONSTRUCTION COMPANY, a Corporation, Plaintiff and Appellee.

1. CARRIERS—"PRIVATE CARRIERS."—A common carrier may become a "private carrier," when, as a matter of accommodation or special engagement, it undertakes to carry something which it is not its business to carry.

2. SAME—COMMON OR PRIVATE CARRIER—TESTS—"COMMON CARRIER."—
The tests whether a carrier is a "common carrier" are: First, he

must be engaged in the business of carrying goods for others as a public employee, and so hold himself out; second, he must undertake to carry goods of the kind to which his business is confined; third, he must undertake to carry by the methods by which his business is conducted and over his established roads; fourth, transportation must be for hire; and, fifth, an action must lie against him if he refused without reason to carry such goods for those willing to comply with his terms.

3. SAME—SPECIAL CONTRACTS—CONTRACTORS—CONSTRUCTION—"POINT." Under a contract providing that a carrier would return the outfit of a railroad contractor to point of shipment from any point on the carrier's line, the word "point" would be construed to mean a station or point where the carrier was doing its regular business as a common carrier.

4. SAME—PRIVATE CARRIERS—CONTRACTOR'S OUTFIT—DESTRUCTION OF GOODS.—Under a contract providing that a carrier would return the outfit of a railroad contractor to point of shipment from any point on the carrier's line, where a loss occurred at a place which was between two regular stations on the carrier's line, the carrier could not escape liability on the theory that he was a private carrier, in that the outfit had been picked up at a place which was beyond any station of the carrier, where, after the goods arrived at a station, they were billed through to point of destination, as any other goods, though at the contract rate.

5. SAME—SAME—CARRIAGE OF CONTRACTOR'S OUTFIT—REDUCED RATES.— Where a common carrier agrees with a contractor for an extension to carry at a reduced rate to and from the place of construction the necessary grading outfit, supplies, etc., loss to be at contractor's risk, and the goods which were actually carried were the goods commonly carried by it and for which it had a tariff rate, and the movement of the train on which the goods were was directed like other trains, it is a common carrier as to such goods, and not a private carrier, and hence is liable for destruction of the goods caused by its negligence.

6. SAME—LIMITATION OF LIABILITY.—A common carrier may, by an agreement to that effect, based on proper consideration, limit its liability for loss of or damage to goods of a shipper, except such as may be caused by its own negligence.

7. SAME—LOSS OF GOODS—BURDEN OF PROOF.—In an action for loss by fire of goods in transportation, loss to be at shipper's risk, the burden is on the shipper to show that the fire was caused by the negligence of the carrier.

8. TRIAL—QUESTION FOR JURY—UNDISPUTED EVIDENCE.—Where evidence, though undisputed, might be differently construed and considered by different conscientious intelligent men in determining the ultimate fact of negligence, it is for the jury.

9. CARRIERS—LOSS OF GOODS—QUESTION FOR JURY.—In an action for destruction of goods by fire, whether the carrier was negligent in

leaving the shipment at an out of the way station, where there was neither station agent nor water, no inhabitants, and no one to look after the safety of the cars containing it, *held,* for the jury.

10. Same—Rates — Interstate Commerce—Railroad Contractors.— Where an agreement for a reduced rate for the shipment of a railroad contractor's outfit is included in the specifications and contract, under which a contractor was the successful bidder, his action for damages for loss of goods shipped cannot be defeated because he was given a preference in rates under the interstate commerce law, since such right was expressly recognized by the commerce commission in an administrative ruling.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for Maricopa County. Edward Kent, Judge. Affirmed.

The facts are stated in the opinion.

Paul Burks, A. H. Van Cott and L. H. Chambers, for Appellant.

A railroad company may, by special contract, become a private carrier. *New York C. R. R. Co.* v. *Lockwood,* 17 Wall. (U. S.) 357, 21 L. Ed. 627. The provision in the contract for the construction of appellant's road that it would move the contractor's camp and grading outfit at less than tariff rates, and that the movement should be at the contractor's risk, was valid; and it relieved appellant from liability for the loss of appellee's goods, no matter how caused. Appellant *quoad* this transaction was a private carrier. 4 Elliott on Railroads, 2d ed., pp. 11, 12, secs. 1396, 1397; *B. & O. S. R. Co.* v. *Voight,* 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560. "A common carrier may become a private carrier or bailee for hire when, as a matter of accommodation or special agreement, he undertakes to carry something which it is not his business to carry. The relation in such case is changed from that of a common carrier to that of a private carrier, and where this is the effect of the special arrangement, the carrier is not liable as a common carrier and cannot be proceeded against as such." Hutchinson on Carriers, sec. 44; *Coup* v. *Railway Co.,* 56 Mich. 111, 56 Am. Rep. 374, 22 N. W. 215; *Robertson* v. *Old Colony R. R. Co.,* 156 Mass. 525, 32 Am. St. Rep. 482, 31 N. E. 650; *C. M. & St. P. R. R. Co.* v. *Wallace,* 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161. A

private carrier may lawfully contract for exemption from liability for loss caused by its own negligence. The contract entered into was not a private contract personal to any particular person or corporation, but a bid for construction work, applicable to anyone who might accept, and therefore was not in violation of the Interstate Commerce Act, and was valid. The appellee having expressly charged negligence, and having the affirmative, the burden was on it to establish such negligence. *Charnock* v. *Texas & Pacific Ry. Co.,* 194 U. S. 432, 24 Sup. Ct. 671, 48 L. Ed. 1057.

A. C. Baker and Isidore B. Dockweiler, for Appellee.

"A common carrier receiving goods for transportation under a special limitation of liability is a common carrier still." *Mears* v. *New York etc. R. Co.,* 75 Conn. 171, 96 Am. St. Rep. 193, 52 Atl. 610, 56 L. R. A. 884. A common carrier could not, as a matter of law, by contract, relieve itself from liability for the consequences of its own negligence. Whether public or private carrier, the appellant was a bailee for hire, and as such bound to exercise at least ordinary care, and was liable to the appellant for its acts of negligence in the performance of this duty. The exemption contracted for was from loss occasioned by the dangers naturally incident to the carriage, and not from those brought about by the carrier's negligence, that the latter are not within the intendment of the exemption. *Thomas* v. *Lancaster Mills,* 71 Fed. 481, 19 C. C. A. 88; *Chicago etc. Ry. Co.* v. *Calumet etc. Farm,* 194 Ill. 9, 88 Am. St. Rep. 68, 61 N. E. 1095. The evidence showed such an omission of duty on the part of the appellant as to warrant the jury to say that the appellant had been guilty of negligence. "Where from facts properly in evidence negligence may be inferred as a conclusion of fact, it is distinctively the function of the jury to draw such inference, and the question of negligence must be left to their determination." 21 Ency. of Law, 507.

DOAN, J.—This is an appeal from a judgment for $9,061, rendered by the district court of Maricopa county as damages for the loss by fire of the property of the appellee while in transit on the road of the appellant company.

The facts in the case appear to be that prior to June 5, 1907, the construction company had been engaged in grading a railroad for the appellant.   The contract under which this road was constructed (composed of eighteen subheads or paragraphs) contained, among other conditions and provisions, the following, to wit: "(14) Water will be delivered in cars at the end of the track at the rate of one dollar and fifty cents ($1.50) per 1,000 gallons, and supplies will be hauled to end of track, both in the usual manner of construction trains, subject to delays, etc., incident thereto.   All risk of loss or damage to be borne by the contractor.   (15) The company will furnish a rate of one cent per ton mile from all points on the Santa Fe, Prescott and Phoenix Road, and leased roads to the contractor on camp and grading outfit and supplies, etc., except explosives and commissary goods, and return to original shipping point at same rate on completion of the work.   All movements of goods at less than tariff rates to be at consignee's risk of loss and damage.   (16) The company will also furnish the contractor's employees . . . a rate of one cent per passenger mile . . . and return those who have worked until completion of contract at the same rate.   Passengers carried at less than tariff rates will be required to assume all risk of accidents to person and baggage.   The plan of movement of these employees and freight is to be according to the rule of the general freight and passenger agent."   This contract was based upon a proposal for bids made by the appellant under which the appellee was the accepted bidder.   The proposal contained the stipulations as they appear in the above quotation from the contract.   On June 5, 1907, upon the completion of the construction of the roadbed, the appellants, at the request of the appellee, placed certain cars at the end of the track some twelve miles west of Bouse (the last regular station west on the Arizona and Colorado Road), and appellee loaded thereon its camp and grading outfit, and several of its workmen, and the cars were hauled by appellant to Bouse.   The appellee unloaded a quantity of powder and hay, and purchased transportation for the workmen.   The said cars and contents were waybilled to Phoenix, Arizona, and the cars were then and there cut into and became a part of appellant's regular freight train No. 12.   Appellant's freight train No. 12 then proceeded from Bouse toward

Phoenix, *via* Wickenburg. About 11 o'clock on the night of June 5, 1907, at a point between Bouse and Wickenburg known as the A. & C. Junction, the conductor in charge of train No. 12 cut out therefrom ten cars, and left them upon a sidetrack. Six of these cars were loaded with the outfit of the appellee, one was a commercial car of ore, and three were empty cars. Train No. 12 then proceeded to Wickenburg with its remaining cars. These consisted of a combination or caboose car, two cars of livestock, being part of the shipment of appellee, and one empty car. On the morning of June 6, 1907, four of the cars loaded with the grading outfit and other property of the appellee that had been left upon the sidetrack were, with their contents, destroyed by fire. There was no station agent of the appellant at the sidetrack at the A. & G. Junction where the fire occurred; no water-tank, nor any water supply there; no inhabitants there; and no one was left in charge to look after the cars thus sidetracked by the appellant. The appellee brought suit in the district court of Maricopa county to recover for the loss of that portion of the camping outfit and other property that was destroyed by the burning of the cars and their contents. The case was tried to a jury, and a verdict returned for $9,061 damages, and judgment rendered thereon. A motion for a new trial was denied. From the judgment and the denial of the motion for a new trial, this appeal has been taken.

The appellant, in support of its various assignments of error, has presented and urged five legal propositions: "(1) That the contract for the movement of appellee's goods, in connection with the construction by it of appellant's road, was valid, and it relieved appellant from liability for the loss of appellee's goods, no matter how caused." Appellant contends that, in handling appellee's goods under the contract, it acted as a private carrier, and, if so, would have a right to protect itself by the exemption contained in the contract from liability, even if occasioned by its own negligence. This was the theory upon which the appellant tried the case in the lower court, while the theory on which the case was tried by the appellee was that the appellant acted as a common carrier, and would therefore, even under the terms of the contract, be liable for loss occasioned by its negligence.

It is conceded that a public carrier may, under some circumstances, act as a private carrier. A common carrier may become a private carrier when "as a matter of accommodation or special engagement he undertakes to carry something which it is not his business to carry." *Liverpool Steam Co.* v. *Phoenix Ins. Co.*, 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; *L. N. A. & C. R. Co.* v. *Keefer*, 146 Ind. 21, 58 Am. St. Rep. 348, 44 N. E. 796, 38 L. R. A. 93; *Railroad Co.* v. *Lockwood*, 17 Wall. 357, 21 L. Ed. 627. 4 Elliott on Railroads, page 11, states the rule: "Where there is a right to refuse to perform the services requested, there is a right to contract for their performance in a different capacity from that which rests upon a railroad company as a public or common carrier."

Mr. Hutchinson, in his excellent work on Carriers, submits (1 Hutchinson on Carriers, section 48), as a test by which we can determine whether a party assumes the duties and responsibilities of a common carrier, five characteristics: "(1) He must be engaged in the business of carrying goods for others as a public employment, and must hold himself out as ready to engage in the transportation of goods for persons generally as a business, and not as a casual occupation. (2) He must undertake to carry goods of the kind to which his business is confined. (3) He must undertake to carry by the methods by which his business is conducted, and over his established roads. (4) The transportation must be for hire. (5) An action must lie against him if he refuses, without sufficient reason, to carry such goods for those who are willing to comply with his terms."

Applying these tests to the appellant in the case at bar, we find that:

(1) It is engaged in the business of carrying goods for others as a public employment.

(2) It undertakes, as a business, to carry goods of the kind now under consideration. The appellant's witnesses testified that the rate charged the appellee in the contract is less than tariff rates; that one cent per ton mile was less than the established rate charged to the public. It was conceded that it had a rate for the carrying of this particular kind of goods, and that it held itself out as a common carrier thereof.

(3) The appellant agreed to carry by its usual methods and over its established road the property, goods, and commodities

in question. The contract provides that: "The company will furnish a rate of one cent per ton mile from all points on the Santa Fe, Prescott and Phoenix road, and leased roads for contractors on camp and grading outfit and supplies, etc., except explosives and commissary goods, and return to original shipping point at same rates on completion of the work. All movements of goods at less than tariff rates to be at consignee's risk of loss and damage." It has been urged, in this connection, that the cars were spotted by appellant, loaded by the appellee, and afterward picked up by the appellant at the end of the track several miles west of Bouse, its last regular station, and that they were brought to Bouse for appellee's accommodation, and that such service could not have been compelled by the appellee. It is not necessary to determine the relation that existed between the parties, or where would have rested the liability for loss if any had occurred while the cars and goods were being brought from the end of the track to the station. The contract on which the appellant relies in this instance does not provide for picking up the cars at the front, but only for returning to original shipping point on completion of work from all points on the Santa Fe, Prescott and Phoenix Railway or leased roads. The word "points" would, by a fair construction, mean station or point where appellant was doing its regular business as a common carrier. The acts made obligatory on the appellee by the contract are to be considered in this connection, rather than acts that may have been voluntarily performed by it. The test we are applying says: "When it undertakes to do," etc. The provision in paragraph 14 for hauling water and supplies to the end of track during construction does not provide for hauling camp and grading outfits, either to or from the end of the track, but seems to be a provision for hauling water and supplies during the course of construction, while the shipment of the camp and grading outfit after completion of the work appears to have been had under the provisions contained in paragraphs 15 and 16 of the contract. It would not be material whether the appellee had brought in its camp and grading outfit to the station at Bouse, and there shipped it to the point from which it had been shipped in at commencement of work, or whether, the cars being furnished at the front, the appellant had picked up these cars for it, and brought

them into Bouse. Neither is it material whether in so doing the appellant acted as a private or common carrier; whether it was done for hire or gratis. The fact is established that at Bouse, a point on the railroad operated by the appellant, the camp and grading outfit was received. One provision of the contract excepts explosives and commissary goods. The record discloses that, on arriving at Bouse, the party in charge of the outfit unloaded some powder and hay; purchased transportation from Bouse to Phoenix for the employees at the rate provided by the contract; the cars were waybilled by appellant's agent (presumably at the rate of one cent per ton mile) and cut into and became a part of appellant's regular freight train No. 12, the plan of movement of which was admittedly according to the rules of the general freight and passenger agent of the appellant company.

(4) The transportation must be for hire. This point is conceded as definitely established by the facts, as well as by the wording of the agreement.

(5) An action must lie upon a carrier's refusal, without sufficient reason, to carry such goods, if the party is willing to comply with its terms. When the freight and passengers in question were tendered to appellant at Bouse, from which point we have just stated the goods were waybilled by its agent, and transportation for the passengers was purchased from its agent, although at the reduced rates provided in the contract, there is no question but that a duty rested upon the appellant to transport the goods and employees at the rate named in the contract, and an action would lie for its refusal to do so.

The appellant, under the above rule, was a common carrier, and was, as such, transporting the goods at the time they were sidetracked at the point where they were afterward destroyed by fire. It is conceded that a common carrier may, by an agreement to that effect, based upon proper consideration, limit its liability for loss of or damage to goods of a shipper, except such as may be caused by its own negligence. *Adams Exp. Co.* v. *Carnahan,* 29 Ind. App. 606, 94 Am. St. Rep. 279, 63 N. E. 245, 64 N. E. 647. "When a carrier has a regularly established business for carrying all or certain articles, and especially if that carrier is a corporation created for the purpose of carrying trade, and the carriage of the articles is em-

braced within the scope of its chartered powers, it is a common carrier, and a special contract about its responsibility does not devest it of that character." *Liverpool etc. St. Co.* v. *Phoenix Ins. Co.*, 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; *Railroad Co.* v. *Lockwood,* 17 Wall. 376, 21 L. Ed. 627; *Mears* v. *New York etc. R. Co.,* 75 Conn. 171, 96 Am. St. Rep. 193, 52 Atl. 610, 56 L. R. A. 884; *Richmond* v. *Southern Pacific*, 41 Or. 54, 93 Am. St. Rep. 694, 67 Pac. 947, 57 L. R. A. 616. The foregoing principle is so well established by weight of authority that it is considered elementary in the law of carriers. Under this rule, the limitations in the contract will protect the appellant against liability for any loss or damage, except that caused by its own negligence.

This leaves us to consider whether the loss in this instance was caused by the negligence of the appellant. The second proposition urged by the appellant is that, "assuming for the sake of argument that the contract did not in law relieve the appellant from liability for the loss of the goods caused by its negligence, yet the burden was upon the appellee to show by a preponderance of evidence that some negligence of appellant was the proximate cause for the loss of the goods. This burden appellee totally failed to carry." It is conceded that the burden was upon the appellee to prove by a preponderance of the evidence that the loss was occasioned by the negligence of the appellant, and the court instructed the jury to that effect. Appellant states that the appellee totally failed to carry this burden. The question as to whether or not the appellee met this requirement was a question of fact for the jury. The learned court carefully instructed the jury on this point as follows: "The vital question in this case is to determine whether these goods were lost or destroyed by reason of the neglect of the railroad company. Because if they were not, Grant Bros. have to stand the loss. If they were lost through the railroad company's negligence, then the railroad company must stand it. Now, the question of whether the goods were lost through the railroad company's negligence or not is one of fact for you to determine, and the burden of proving it is upon the Grant Bros. Construction Company, the plaintiff in this case. They must satisfy you by a preponderance of the evidence that this loss of these goods was brought about by negligence of the railroad company; if you

are satisfied by a preponderance of the evidence that the loss was caused by negligence of the railroad company, then you ought to award the damages for the value of the goods; if you are not so satisfied by a preponderance of the evidence that the loss was caused by the negligence of the railroad company, then you should not award any damages at all, and you should in that event find for the defendant.'' The court likewise defined ''negligence'' at considerable length, and then states: ''The jury in this case, taking this as a definition of negligence, is to find from the facts surrounding the transaction in question whether or not the defendant company has committed negligence, and, if they so find, and further find that such negligence was the proximate cause of the destruction of plaintiff's property by fire, then the verdict shall be for plaintiff.''

The facts in the case are undisputed. There is no conflict in the testimony in regard to the facts and circumstances surrounding the shipment of the goods from Bouse, and the setting out on the sidetrack at the A. & C. Junction, of the cars and contents that were afterward destroyed by fire; but the effect of these circumstances and facts in establishing negligence on the part of the appellant might be differently construed and considered by different conscientious, intelligent men in determining the ultimate fact of negligence. For that reason, a submission of the question to the jury by the trial court was eminently proper, and for that reason it cannot be said that the appellee failed to carry the burden of proof. The determination of this question disposes of the next proposition urged by the appellant that the court erred in denying the appellant's motion for a directed verdict.

The fourth proposition urged is the error of the court in instructing the jury. An examination of the court's charge to the jury discloses no reversible error.

The last proposition urged is the error of the court in denying the motion to set aside the verdict and grant a new trial. In support of this no argument is offered, and it may be disposed of by saying that if the question of negligence was one of fact for the jury, and there was evidence in the record to sustain their verdict, the denial by the trial court of the motion to set aside the same was fully sustained by the record.

The appellant, although it based its first legal proposition

upon the statement that "the contract for the movement of supplies and goods in connection with the construction of appellant's road was valid," has in the latter part of its brief urged that such contract would, by offering a different rate than that offered to the public generally, be invalid by reason of coming within the inhibition of the interstate commerce law. In reply to this, it may be said that this was not a private contract to Grant Bros. as a corporation, but was included in the appellant's proposal for bids, the benefit of which would accrue to anyone who would be the successful bidder. The right, however, of a railroad, as a common carrier, to grant such terms, was recognized by the Interstate Commerce Commission as quoted by appellant on pages 73 and 74 of its brief: "On October 12, 1906, the commission announced an administrative ruling as follows: 'Issuance and use of free passes. . . . But the commission does not construe the law as preventing a carrier from giving. . . . Nor does the commission construe the law as preventing a carrier from giving free or reduced rate carriage over its line to contractors for materials, supplies and men for use in construction, improvement or renewal work on the line of that carrier; provided such arrangements for such free or reduced rate carriage are made a part of the specifications upon which the contract is based, and of the contract itself.' " The arrangements for reduced rate carriage of men, material, and supplies were, in the case at bar, made a part of the specifications on which the contract was based, and of the contract itself.

The record discloses no reversible error, and the judgment of the lower court is therefore affirmed.

LEWIS and DOE, JJ., concur. CAMPBELL, J., did **not** participate in the decision of this case.

NOTE.—As to right of common carrier to limit common-law liability by contract in the absence of negligence, see note to *Little Rock & S. F. R. Co.* v. *Cravens* (Ark.), 18 L. R. A. 527.